08-3064-cr(L)
USA v. McTier

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to summary orders filed after January 1, 2007, is permitted and is governed by this court's Local Rule 32.1 and Federal Rule of Appellate Procedure 32.1. In a brief or other paper in which a litigant cites a summary order, in each paragraph in which a citation appears, at least one citation must either be to the Federal Appendix or be accompanied by the notation: "(summary order)." A party citing a summary order must serve a copy of that summary order together with the paper in which the summary order is cited on any party not represented by counsel unless the summary order is available in an electronic database which is publicly accessible without payment of fee (such as the database available at http://www.ca2.uscourts.gov/). If no copy is served by reason of the availability of the order on such a database, the citation must include reference to that database and the docket number of the case in which the order was entered.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 1ˢᵗ day of December, two thousand and nine.

PRESENT:

> ROGER J. MINER,
> JOSÉ A. CABRANES,
> CHESTER J. STRAUB,
> *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

          *Appellee,*

   v.

Nos. 08-3064-cr(L), 08-3654-cr(CON), 08-3865-cr(CON), 08-3876-cr(CON)

JOSE NIEVES, also known as JULIO, JOSIAH MCTIER, also known as JO, GARETH VIALVE, also known as VOLVO,

          *Defendants,*

JAMES MCTIER, also known as JD, TRAVIS SCOTT, also known as DIRTY TRAVIS, SHARIEF RUSSELL, also known as LUCKY, DWAYNE STONE, also known as DIVINE,

          *Defendants-Appellants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

1

FOR APPELLANTS:                    Adam D. Perlmutter, New York, NY, *for defendant-appellant James McTier.*

Arza Feldman, Feldman & Feldman, Uniondale, NY, *for defendant-appellant Sharief Russell.*

JONATHAN SVETKEY, Watters & Svetky, LLP, New York, NY, *for defendant-appellant Dwayne Stone.*

FOR APPELLEE:                      JASON A. JONES, Assistant United States Attorney (Benton J. Campbell, United States Attorney, and Peter A. Norling and Jeffrey H. Knox, Assistant United States Attorneys, *on the brief*), United States Attorney's Office for the Eastern District of New York, Brooklyn, NY.

Appeal from judgments of conviction of the United States District Court for the Eastern District of New York (I. Leo Glasser, *Judge*).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the District Court are **AFFIRMED**.

Defendants-appellants James McTier ("McTier"), Sharief Russell ("Russell"), and Dwayne Stone ("Stone") appeal from judgments of conviction entered after a jury found defendants guilty of various charges of murder, racketeering, and drug and weapons possession stemming from defendants' affiliation with the "Folk Nation" gang, which operated in the Brownsville neighborhood of Brooklyn, New York. Defendants were convicted and sentenced as follows:

McTier was convicted of murder in aid of racketeering, attempted murder in aid of racketeering, conspiracy to commit murder in aid of racketeering and assault in aid of racketeering, *see* 18 U.S.C. § 1959(a)(1), (3), (5), racketeering and racketeering conspiracy, *see id.* § 1962, and using and carrying a firearm during and in relation to a crime of violence, *see id.* § 924(c). Though McTier was eligible for the death penalty, the District Court sentenced him principally to life imprisonment.

Russell was convicted of murder in aid of racketeering, *see id.* § 1959(a)(1), racketeering and racketeering conspiracy, *see id.* § 1962, conspiracy to distribute and to possess with intent to distribute cocaine base, *see* 21 U.S.C. §§ 841(a)(1), 846, using and carrying a firearm during and in relation to a crime of violence and a drug trafficking crime, *see* 18 U.S.C. § 924(c), and possession of stolen firearms, *see id.* § 922(j). The District Court sentenced Russell principally to life imprisonment.

Stone was convicted of murder and conspiracy to murder in aid of racketeering, *see id.* §§ 1959(a)(1), (5), racketeering and racketeering conspiracy, *see id.* § 1962, using and carrying a firearm during and in relation to a drug trafficking crime and a crime of violence, *see id.* § 924(c), conspiracy to

2

distribute and to possess with intent to distribute cocaine base, *see* 21 U.S.C. §§ 841(a)(1), 846, and possession of stolen firearms, *see* 18 U.S.C. § 922(j). The District Court sentenced Stone principally to life imprisonment.

On appeal, defendants make the following arguments: (1) McTier and Russell argue that the trial testimony of FBI Agent Jed Salter violated the Confrontation Clause of the Sixth Amendment as construed by *Crawford v. Washington*, 541 U.S. 36 (2004); (2) Russell argues that the District Court erred by dismissing Juror Three and replacing her with the first alternate juror; (3) McTier argues that the District Court erred by admitting into evidence a taped telephone call between McTier and Lonie Lewin, an associate of the Folk Nation gang; (4) Russell argues that the District Court erred by denying his motion to sever under Federal Rule of Criminal Procedure 14; (5) Stone argues that the District Court erred by denying Stone's request for a new trial or further inquiry into the jury's deliberations; (6) Stone argues that the evidence at trial was insufficient for the jury to convict him on the charge of murder and conspiracy to murder in aid of racketeering, *see* 18 U.S.C. § 1959(a)(1), (5); and (7) McTier and Stone argue that their sentences should be vacated and remanded because the District Court improperly sentenced them for using a firearm during and in relation to a violent felony or drug trafficking crime, *see United States v. Williams*, 558 F.3d 166 (2d Cir. 2009); *United States v. Whitley*, 529 F.3d 150 (2d Cir. 2008).[1]

## I.     The Alleged *Crawford* Violation

McTier and Russell argue that the trial testimony of FBI Agent Jed Salter violated the Confrontation Clause insofar as Agent Salter testified that he told McTier that "Juma Cain had confessed twice to the murder of Tabitha Buckman." There was, however, no Confrontation Clause violation, as Agent Salter's statement about Cain's confessions was not, in fact, admitted into evidence. Counsel for McTier objected to the statement, and the District Court sustained the objection. Later, the District Court proposed a limiting instruction admonishing the jury "to disregard the testimony that June Cain confessed to the murder," but defense counsel asked the Court not to give the instruction.

Even if we ultimately concluded, however, that there was a violation of the Confrontation Clause, any error committed was harmless. *See United States v. Lombardozzi*, 491 F.3d 61, 76 (2d Cir. 2007) (articulating the harmless error standard). Absent the testimony of Cain's confessions, the government's case with respect to the Buckman homicide was very strong; the challenged testimony

---

[1] Each defendant joins in the arguments of his co-defendants to the extent applicable pursuant to Federal Rule of Appellate Procedure 28(i). Accordingly, while we highlight the defendant (or defendants) who raises each particular argument herein, we have considered all arguments as to all three defendants where appropriate.

In addition, in a supplemental pro se brief, defendant Stone raises a number of additional arguments, all of which we find meritless.

was cumulative of other properly admitted evidence; the testimony was not at all important in the context of the overall trial; and, as detailed above, the conduct of the prosecutor and the District Court with respect to Agent Salter's testimony was entirely consistent with trying to remedy any alleged Confrontation Clause issue. Accordingly, there is no basis for reversing the judgment of conviction on this issue.

## II.    The Dismissal of Juror Three

Russell argues that the District Court erred by dismissing Juror Three after Juror Three told the Court that she recognized "Cheddar," a member of the Folk Nation gang, as a man who participated in an online chat group of which Juror Three was a member. We review a district court's decision to dismiss a juror before jury deliberations for abuse of discretion. *See, e.g.*, *United States v. Edwards*, 342 F.3d 168, 182-83 (2d Cir. 2003). A district court has abused its discretion if it has (1) "based its ruling on an erroneous view of the law," (2) made a "clearly erroneous assessment of the evidence," or (3) "rendered a decision that cannot be located within the range of permissible decisions." *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks omitted).

The threat of jury tampering loomed over this trial, so much so that the District Court granted the government's request, over defendants' objection, to empanel an anonymous jury.[2] Jurors reported feeling intimidated by spectators in the gallery, and there was an attempt on the part of one of defendants' associates to intimidate a witness. When the District Court learned that Juror Three had some contact with a member of defendants' gang, it was well within the District Court's discretion to conclude that Juror Three's anonymity was threatened and that there was "reasonable cause" to dismiss her. *United States v. Purdy*, 144 F.3d 241, 247 (2d Cir. 1998). In any event, the District Court's decision did not cause "'bias or prejudice to the defendant.'" *Id.* (quoting *United States v. Gambino,* 951 F.2d 498, 503 (2d Cir. 1991)). The dismissal of Juror Three was not, therefore, an error meriting vacatur of the judgment.

## III.    The Admission of the Telephone Call Between McTier and Lewin

McTier argues that the District Court erred by admitting into evidence a taped telephone call between McTier and Lewin**,** an associate of the Folk Nation gang. McTier argues that the telephone call was irrelevant and improperly "bolstered" the credibility of Lewin, who was a cooperating witness for the government. We review a district court's evidentiary rulings for abuse of discretion. *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009); *cf. Sims*, 534 F.3d at 132.

---

[2] On appeal, defendants do not challenge the District Court's decision to empanel an anonymous jury.

The admission of the recording of the telephone call was not an abuse of discretion. The recording was relevant because it provided evidence of McTier's relationship with Lewin and contained arguably incriminating statements by McTier. The claim of improper "bolstering" is unfounded, and the statements were not hearsay because they were either not admitted for the truth of the matter asserted or were non-hearsay admissions under Federal Rule of Evidence 801(d)(2).

## IV.     The Denial of Severance

Russell argues that the District Court erred by denying his motion for severance under Federal Rule of Criminal Procedure 14. Because the government sought the death penalty against McTier, but not Russell, Russell claims that he was subjected to undue prejudice when he was tried by a death-qualified jury. In addition, Russell maintains that he was subjected to undue prejudice when the jury heard evidence of violent crimes in which Russell took no part. Those factors, Russell argues, required the District Court to grant his Rule 14 motion for severance.

"'[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent a jury from making a reliable judgment about guilt or innocence.'" *United States v. Yousef*, 327 F.3d 56, 150 (2d Cir. 2003) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). "There is a preference, in the federal system, for the joint trial of defendants indicted together, and thus, a district court order denying a Rule 14 motion is considered virtually unreviewable and will be overturned only if a defendant can show prejudice so severe that his conviction constituted a miscarriage of justice and that the denial of his motion constituted an abuse of discretion." *Id.* at 149-50 (internal quotation marks, alteration, and citation omitted).

The District Court did not abuse its discretion in denying severance here. The mere fact that Russell was tried before a death-qualified jury was not, by itself, a sufficient ground for severance. *See In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 131-32 (2d Cir. 2008) (citing *Buchanan v. Kentucky*, 483 U.S. 402 (1987)). To the extent that Russell claims that the jury heard evidence of crimes in which he did not directly participate, much of the evidence of those crimes was admissible against Russell because it established the nature and activities of the criminal enterprise—the Folk Nation gang—of which Russell was charged with being a member. Accordingly, the admission of such evidence was not grounds for severance. *See United States v. Diaz*, 176 F.3d 52, 102-04 (2d Cir. 1999).

## V. The Denial of a New Trial or Further Investigation Following Allegations of Jury Misconduct

Stone argues that the District Court erred by denying Stone's request for a new trial or further inquiry into the jury's deliberations. Following the trial, Juror Eleven had a chance encounter with the attorney representing Russell in which Juror Eleven expressed his concerns that members of the jury had access to cell phones and newspapers in the jury deliberation room and had sent cell phone text messages to alternate jurors during deliberations. The District Court held a hearing and interviewed Juror Eleven. The hearing clarified that Juror Eleven, who was a court security officer in the state court system, was unnerved that "things were done here differently than what [he was] used to at [state] trials." Although Juror Eleven had heard other jurors discussing cases that the attorneys had previously tried and that Judge Glasser had previously presided over, Juror Eleven had no other "personal knowledge of any juror seeking information about the case or the parties." In particular, Juror Eleven had heard one juror suggest that a text message be sent to an alternate juror, but Juror Eleven had no knowledge of whether such a text message was, in fact, sent.

Stone and Russell moved for a new trial—or, in the alternative, a broader investigation into the jury's conduct—based on Juror Eleven's statements. The District Court denied the motion after finding that Juror Eleven's testimony was insufficient "to overcome the presumption of jury impartiality."

"We review the denial of a motion for a new trial for abuse of discretion." *United States v. Greer*, 285 F.3d 158, 170 (2d Cir. 2002); *cf. Sims*, 534 F.3d at 132. "Although we cannot lightly brush aside allegations of juror misconduct, we recognize that the trial judge has broad discretion to decide questions involving such misconduct." *United States v. Carmona*, 858 F.2d 66, 69 (2d Cir. 1988). We conclude that the District Court's denial of the motion for a new trial—and the District Court's decision not to conduct further evidentiary hearings into the jury's deliberations—was, in the circumstances presented here, well within the range of permissible decisions.

## VI. The Sufficiency of the Evidence for Stone's Murder-in-Aid-of-Racketeering Conviction

Stone argues that the evidence at trial was insufficient for the jury to convict him of murder and conspiracy to murder in aid of racketeering. *See* 18 U.S.C. § 1959(a)(1), (5). Because "the task of choosing among competing, permissible inferences is for the [jury and] not for the reviewing court," *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001), we are required to review the evidence "in the light most favorable to the government," *United States v. Gaskin*, 364 F.3d 438, 459 (2d Cir. 2004), and to "resolve all issues of credibility in favor of the jury's verdict," *United States v. Desena*, 287 F.3d 170, 177 (2d Cir. 2002) (internal quotation marks omitted). *See generally Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). After a review of the trial record, we conclude that Stone has not met the "heavy burden" of demonstrating that the evidence was insufficient for the jury to convict him of murder in

aid of racketeering. *United States v. Walsh*, 194 F.3d 37, 51 (2d Cir. 1999) (internal quotation marks omitted).

## VII. The Convictions for Use of a Firearm Under 18 U.S.C. § 924(c)

McTier and Stone argue that the District Court improperly sentenced them under 18 U.S.C. § 924(c). McTier and Stone did not raise this argument before the District Court, and thus we review for plain error. "To demonstrate plain error, a defendant must show (1) error, (2) that is plain at the time of appellate review, and (3) that affects substantial rights. Where these conditions are met, we have the discretion to notice a forfeited error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Quinones*, 511 F.3d 289, 316 (2d Cir. 2007).

Subsection 924(c) provides in relevant part:

> *Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law*, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>> (i) be sentenced to a term of imprisonment of not less than 5 years;
>> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A) (emphasis added). We have held that the "except" clause of this subsection "'means what it literally says'—that the minimum sentences it requires do not apply where 'a greater minimum sentence is otherwise provided by . . . *any other provision of* law.'" *Williams*, 558 F.3d at 169 (quoting *Whitley*, 529 F.3d at 153).

Here, McTier and Stone were convicted on counts of murder in aid of racketeering and sentenced to life imprisonment—the statutory minimum—on those counts. Also, prior to our decisions in *Williams* and *Whitley*, the District Court sentenced McTier and Stone to additional "consecutive" terms of imprisonment under 18 U.S.C. § 924(c)(1)(A). The government now concedes that, under *Williams* and *Whitley*, some of the sentences the District Court imposed under § 924(c)(1)(A) were erroneous because another provision of law provided "'a greater minimum sentence'"—life imprisonment—than the sentences called for in § 924(c)(1)(A). *Williams*, 558 F.3d at 169 (quoting *Whitley*, 529 F.3d at 153).

Nonetheless, even if some of the sentences imposed under § 924(c)(1)(A) were erroneous, the errors were harmless in the circumstances here and thus did not affect defendants' substantial rights. Because each defendant was sentenced to life imprisonment, the "consecutive" sentences under § 924(c)(1)(A) are "irrelevant to the time [each defendant] will serve in prison, and we can think of no collateral consequences from such erroneous . . . sentences that would justify vacating them." *United States v. Rivera*, 282 F.3d 74, 78 (2d Cir. 2000). Thus, even though the District Court erred in sentencing McTier and Stone under § 924(c)(1)(A), we need not vacate the sentences.

\*   \*   \*

We have carefully considered defendants' remaining arguments on appeal and find them to be without merit.

## CONCLUSION

For the reasons set forth above, the judgments of the District Court are AFFIRMED.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court

By _____

8