*Stone v. United States*

# In the
# United States Court of Appeals
# For the Second Circuit

————

AUGUST TERM 2021

ARGUED: SEPTEMBER 13, 2021
DECIDED: JUNE 21, 2022

No. 20-1778

DWAYNE STONE,
*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,
*Respondent-Appellee*.

————

Appeal from the United States District Court
for the Eastern District of New York.

————

Before: WALKER, NARDINI, and MENASHI, *Circuit Judges*.

————

Following a jury trial in the United States District Court for the Eastern District of New York, Dwayne Stone was convicted of (1) conspiracy to commit second-degree murder in aid of racketeering, (2) second-degree murder in aid of racketeering, and (3) using a firearm during and in relation to a crime of violence, in violation of 18

U.S.C. § 924(c).  Eight years later, Stone filed a petition for habeas corpus under 28 U.S.C. § 2255, contending that his § 924(c) conviction and its accompanying sentence were unlawful.  The district court (Glasser, *J.*) denied the petition but granted a certificate of appealability.  On appeal, Stone argues that his § 924(c) conviction was unlawful because (1) it was possibly predicated on conspiracy to commit murder, an offense that no longer qualifies as a crime of violence, and (2) even if it were predicated on substantive murder, that offense also does not qualify as a crime of violence.  We find no merit in these challenges.  Accordingly, we **AFFIRM** the judgment of the district court.

————

> DANIEL HABIB, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY, *for Petitioner-Appellant Dwayne Stone*
>
> NICHOLAS AXELROD (Amy Busa, Ellen H. Sise, *on the brief*), Assistant United States Attorneys, *for* Mark J. Lesko, Acting United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Respondent-Appellee United States of America*

————

JOHN M. WALKER, JR., *Circuit Judge*:

Following a jury trial in the United States District Court for the Eastern District of New York, Dwayne Stone was convicted of (1) conspiracy to commit second-degree murder in aid of racketeering, (2) second-degree murder in aid of racketeering, and (3) using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).  Eight years later, Stone filed a petition for habeas corpus under 28 U.S.C. § 2255, contending that his § 924(c) conviction and its accompanying sentence were unlawful.  The district court

(Glasser, *J.*) denied the petition but granted a certificate of appealability. On appeal, Stone argues that his § 924(c) conviction was unlawful because (1) it was possibly predicated on conspiracy to commit murder, an offense that no longer qualifies as a crime of violence, and (2) even if it were predicated on substantive murder, that offense also does not qualify as a crime of violence. We find no merit in these challenges. Accordingly, we **AFFIRM** the judgment of the district court.

## BACKGROUND

In 2007, Stone was indicted for multiple offenses stemming from his affiliation with the "Folk Nation" gang operating in Brooklyn, New York.[1] As relevant here, the indictment charged Stone, under 18 U.S.C. § 1961, with participating in a racketeering enterprise that included the conspiracy to murder and murder of Jamel Washington (Count 1, Racketeering Act 7). Based on the same operative facts, the indictment also charged Stone, under 18 U.S.C. § 1959, with (1) conspiracy to murder in aid of racketeering in violation of N.Y. Penal Law §§ 105.15, 125.25(1) (Count 11), and (2) murder in aid of racketeering in violation of N.Y. Penal Law §§ 125.25(1) and 20.00 (Count 12).[2] Stone was also charged with using a firearm "during and in relation to crimes of violence, to wit, the crimes charged in Counts [11] and [12]," in violation of 18 U.S.C. § 924(c) (Count 13).[3]

At trial, the jury heard evidence that Stone and another Folk Nation member approached Washington, a rival gang member, who

---

[1] *United States v. Nieves*, 354 F. App'x 547, 549–50 (2d Cir. 2009); App. at 85–112.

[2] N.Y. Penal Law § 105.15 criminalizes second-degree conspiracy; N.Y. Penal Law § 125.25(1) criminalizes second-degree murder.

[3] App. at 103–04.

was in the vicinity of Folk Nation territory.  Stone then asked for and received a firearm from his Folk Nation associate, and shot Washington multiple times in the head and back, killing him.

At the close of the trial, the district court instructed the jury that the crimes charged in Counts 11 and 12—conspiracy to commit second-degree murder in aid of racketeering and second-degree murder in aid of racketeering—were both "crimes of violence" as related to the Count 13 firearm charge.[4]  The district court, however, did not give a specific instruction requiring the jury to unanimously agree on which crime—Count 11, Count 12, or both—served as the predicate for the Count 13 conviction.  The jury found Stone guilty of Counts 1, 11, 12, and 13 of the indictment, and found all the racketeering acts alleged in the indictment proven, including Act Seven, which charged Stone with conspiracy to murder Washington and the murder of Washington.[5]  On the Count 13 firearm charge, the jury returned only a general verdict of guilty.  The district court sentenced Stone to, in relevant part, a prison term of 292 months on Count 1, concurrent terms of mandatory life imprisonment on Counts 11 and 12, and to a term of 300 months' imprisonment on Count 13, to run consecutively to the other sentences.

In 2013 Stone filed a petition for habeas corpus under 28 U.S.C. § 2255, contending that his two mandatory life sentences were barred by *Miller v. Alabama*,[6] because he was a juvenile when he committed the offenses.  The district court granted his petition and in 2014 resentenced Stone to 120 months' imprisonment, running concurrently, on Counts 1, 11, and 12, and reimposed the sentence of 300 months' imprisonment on Count 13, to run consecutively to the

---

[4] App. at 184.

[5] Stone was also found guilty of other offenses that are not relevant to this appeal.  *Nieves*, 354 F. App'x at 550.

[6] 567 U.S. 460 (2012).

new sentences.[7]  Stone's projected release date is in June 2040.

In 2016, Stone filed a second § 2255 petition, arguing that his Count 13 conviction under § 924(c) violated the Fifth Amendment's Due Process Clause.  The motion was supplemented in 2019 following the Supreme Court's decision in *United States v. Davis*.[8]  The district court denied the petition in May 2020, but in July issued a certificate of appealability to this court in accordance with 28 U.S.C. § 2253(c)(2). This appeal followed.

## DISCUSSION

Under § 2255, a movant may petition the court to "vacate, set aside or correct" a sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, . . . [the sentencing] court was without jurisdiction to impose such sentence, . . . the sentence was in excess of the maximum authorized by law, or [the sentence] is otherwise subject to collateral attack."[9]  We review *de novo* a district court's denial of a § 2255 petition.[10]

On appeal, Stone argues that the jury was impermissibly allowed to convict him of the Count 13 § 924(c) charge based on a finding that he used a firearm in connection with a murder conspiracy offense because murder conspiracy is not a "crime of violence" within the meaning of § 924(c).  He contends, in the alternative, that his conviction and sentence under § 924(c) should be vacated even if it was premised on a substantive murder offense because that offense

---

[7] This court affirmed the new sentence.  *United States v. Stone*, 621 F. App'x 61, 63 (2d Cir. 2015).

[8] 139 S. Ct. 2319 (2019).

[9] 28 U.S.C. § 2255(a).

[10] *See Kassir v. United States*, 3 F.4th 556, 561 (2d Cir. 2021).

also does not qualify as a crime of violence.  We disagree with both points.

**I.      Section 924(c) Conviction Predicated on Either Conspiracy to Murder or Substantive Murder or Both**

Section 924(c) provides for mandatory minimum sentences for "any person who, during and in relation to any crime of violence . . ., uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."[11]  A crime of violence is defined in § 924(c)(3) as "an offense that is a felony and—(A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."[12]  In *Davis*, the Supreme Court found the "residual" clause of the statute, § 924(c)(3)(B), to be unconstitutionally vague.  Accordingly, only felony offenses that have as "an element the use, attempted use, or threatened use of physical force" under § 924(c)(3)(A) are valid predicate crimes of violence to sustain a § 924(c) conviction.

Count 13 charged Stone with "knowingly and intentionally us[ing] and carry[ing] a firearm during and relation to crimes of violence, to wit, the crimes charged in Counts Eleven [conspiracy to murder in aid of racketeering] and Twelve [murder in aid of racketeering]," and "knowingly and intentionally possess[ing] a

---

[11] 18 U.S.C. § 924(c)(1)(A).

[12] *Id.* § 924(c)(3)(A)–(B).

firearm in furtherance of such crimes of violence" in violation of
§ 924(c).[13]

We recently held that conspiracy to commit murder in aid of
racketeering does not categorically qualify as a crime of violence.[14]  As
described *infra* in Section II, however, murder in aid of racketeering
remains a categorical crime of violence.[15]   Thus, the question
presented in this habeas corpus appeal is as follows:  when a § 924(c)
conviction is predicated on either or both of two crimes, one of which
does not qualify as a crime of violence and one of which does, must
the conviction be vacated?

The Supreme Court has held that "[a] conviction based on a
general verdict is subject to challenge if the jury was instructed on
alternative theories of guilt and may have relied on an invalid one."[16]
However, the Court has also held that "habeas petitioners are not
entitled to habeas relief based on trial error unless they can establish
that it resulted in actual prejudice."[17]  To determine whether a habeas
petitioner was actually prejudiced or the error was harmless, "a
reviewing court finding such [instructional] error should ask whether
the flaw in the instructions 'had substantial and injurious effect or
influence in determining the jury's verdict.'"[18]   There has been
"considerable debate about the exact contours of harmless-error
analysis in the collateral context—specifically, 'how convinced,' on

---

[13] App. at 103–04.

[14] *United States v. Pastore*, -- F. 4th --, 2022 WL 2057424, at *3 (2d Cir. June 8, 2022).

[15] *See United States v. Scott*, 990 F.3d 94, 100–01 (2d Cir. 2021) (en banc).

[16] *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008).

[17] *Davis v. Ayala*, 576 U.S. 257, 267 (2015) (internal quotation marks omitted); *see also Santana-Madera v. United States*, 260 F.3d 133, 140 (2d Cir. 2001) (noting that harmless-error analysis applies on collateral review).

[18] *Pulido*, 555 U.S. at 58 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

collateral review, 'a reviewing court must be before it can declare a federal constitutional error harmless.'"[19]   But one thing is clear: "[w]ithout prejudicial error, there is no basis for collateral relief."[20]

We must therefore determine whether Stone was prejudiced by the district court's incorrect instruction to the jury that conspiracy to commit murder qualified as a crime of violence.   "The usual methodology for determining whether the harmlessness of a constitutional trial error is established with the requisite degree of certainty is to examine the record as a whole to determine if a rational jury, absent the error, would have arrived at the same verdict . . . ."[21] Stone, however, asks the court to forego this method, and argues that the court should instead apply the so-called "categorical approach" to determine whether a *Yates*[22] error in the § 924(c) context is harmless because that is "the only approach[] that this Court endorses in resolving the question [of] whether a 'crime of violence' can support a § 924(c) conviction."[23]

Under the categorical approach, courts identify the minimum conduct necessary for conviction under a particular statute, looking only to the statutory elements of the offense and not to the particular underlying facts in a defendant's case, and determine whether the offense fits within a generic federal standard.[24]   For example, the

---

[19] *Kassir*, 3 F.4th at 564 (quoting *Peck v. United States*, 106 F.3d 450, 454 (2d Cir. 1997)).

[20] *Id.*

[21] *Peck*, 106 F.3d at 455.

[22] *Yates v. United States*, 354 U.S. 298, 312 (1957) (holding that there is constitutional error when two different theories are submitted to a jury that returns a general verdict of guilty and at least one of the theories was legally insufficient).

[23] Appellant's Br. at 29.

[24] *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018); *Nijhawan v. Holder*, 557 U.S. 29, 34–36 (2009).

categorical approach is used to determine such questions as whether a defendant's state or federal law conviction qualifies as a "crime of violence" as defined in § 924(c)[25] and in the Armed Career Criminal Act ("ACCA"),[26] and whether a conviction qualifies as a "crime involving moral turpitude" as defined in the Immigration and Nationality Act[27]. Courts identify the elements of the statutory offense of which the defendant has been convicted, and compare them to the generic federal definition of a "crime of violence" or a "crime involving moral turpitude." In doing so, courts look at only the minimum conduct criminalized by the statutory offense, and consider whether that conduct is encompassed by the generic offense.[28] If the minimum conduct criminalized by a statutory offense is not covered by the generic offense, there is no categorical match, and the statutory offense does not qualify as the generic offense such as, in the above examples, a crime of violence or a crime involving moral turpitude.[29]

Stone urges this court to use the categorical approach here. Specifically, he contends that we must look at the minimum criminal conduct identified in the offense to which the § 924(c) violation pertains and see if that offense qualifies as a crime of violence. Because conspiracy to murder was charged as a predicate for Count 13, and is not a crime of violence, Stone argues that the minimum conduct he was found to have committed is not categorically a crime of violence, and so the entire § 924(c) conviction must be vacated.

Stone's argument misses the fundamental distinction between the reasons why courts employ the categorical approach in some

---

[25] *See United States v. Davis*, 139 S. Ct. 2319, 2327–29 (2019).

[26] *See Mathis v. United States*, 579 U.S. 500, 517–19 (2016).

[27] *See Mendez v. Mukasey*, 547 F.3d 345, 348 (2d Cir. 2008).

[28] *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013).

[29] *Williams v. Barr*, 960 F.3d 68, 78 (2d Cir. 2020).

circumstances, and a harmlessness or prejudice inquiry in others.  The categorical approach, first articulated by the Supreme Court in *Taylor v. United States*,[30] guides how a court may permissibly consider a defendant's previous or other convictions for the purpose of either determining whether the defendant committed a separate offense (e.g., a § 924(c) offense), or applying an enhanced prison term as authorized by statute or the United States Sentencing Guidelines.[31] The categorical approach follows from Congress's use of "uniform categorical definitions to identify predicate offenses,"[32] and it "serves 'practical' purposes:  It promotes judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact."[33]  The categorical approach also avoids the procedural and Sixth Amendment concerns that may arise in employing a factual approach to determine whether a defendant's conviction for one offense can form an element of a separate offense or the basis of a sentencing enhancement.[34]   By contrast, this Court's review of constitutional trial errors for harmlessness or prejudice is directed at the question of whether the defendant received "a fair trial [if] not a perfect one."[35]

The distinction between the two inquiries is critical and necessarily guides our decision as to the appropriate method for

---

[30] 495 U.S. 575 (1990).

[31] *See* 3 Charles Alan Wright, Arthur R. Miller & Sarah N. Welling, Fed. Prac. & Proc. Crim. § 549 (4th ed. 2022).

[32] *Taylor*, 495 U.S. at 591.

[33] *Moncrieffe*, 569 U.S. at 200–01.

[34] *See Taylor v. United States*, 495 U.S. 575, 600–01 (1990).

[35] 3B Wright & Miller, Fed. Prac. & Proc. Crim. § 853; *see also id.* § 855 ("A constitutional error of the trial type . . . would require reversal on direct review unless it could be said to have been harmless beyond a reasonable doubt.  But on collateral attack by habeas corpus, relief can be given for such an error only if it 'had substantial and injurious effect or influence in determining the jury's verdict.'" (quoting *Brecht*, 507 U.S. at 638)).

evaluating Stone's challenge in the circumstances presented in this case. Under § 924(c), a court employs the categorical approach to determine whether the defendant committed a crime of violence at all. Here, by contrast, Stone does not challenge his conviction for murder in aid of racketeering under N.Y. Penal Law § 125.25 (Count 12), and the parties agree that we are bound to hold that such a conviction is a "crime of violence" under § 924(c)(1)(A).[36] Thus, the question we must answer is not whether Stone committed a crime of violence—he plainly did. Instead, our inquiry is focused on whether Stone was prejudiced by the erroneous jury instruction stating that his § 924(c) conviction could be predicated on either or both of two crimes, only one of which remains a constitutionally valid predicate. The cases relied on by Stone applying the categorical approach reflect the concerns at the heart of that doctrine,[37] but these concerns are not present here, on habeas review, where any determination that Stone's § 924(c) conviction rested upon a valid predicate will not result in increased sentencing exposure. Rather, on appeal from the denial of a § 2255 motion, we review the whole record to determine whether Stone received a fair, if imperfect, trial. We thus decline to import the categorical method to a determination of prejudice upon a § 924(c) conviction predicated in part on an invalid crime of violence.

Accordingly, in the context of a § 924(c) conviction, where a jury's finding of guilt is based on two predicates, only one of which can lawfully sustain guilt, we will find the error harmless when the jury would have found "the essential elements of guilt on the alternative charged predicate that would sustain a lawful conviction"

---

[36] *See Scott*, 990 F.3d at 125.

[37] *See, e.g.*, *United States v. Dantzler*, 771 F.3d 137, 139 (2d Cir. 2014) (determination whether offenses were committed "on occasions different from another" for purposes of application of sentencing under the Armed Career Criminal Act requires the categorical approach).

beyond a reasonable doubt.[38]   For example, in *United States v. Eldridge*,[39] a defendant's § 924(c) conviction was predicated on either or both of two offenses, one of which no longer qualified as a crime of violence after *Davis*.   The court, in deciding whether the defendant was prejudiced by the error, examined the record to determine whether the jury would have returned a guilty verdict if it had been instructed to use only the still-valid predicate for the § 924(c) charge.[40] It concluded that any error with the invalid predicate was harmless "given the strength of the evidence supporting the [valid] predicate and the link between [the defendant's] brandishing of the gun and that crime."[41]  This court has performed the same analysis on multiple other occasions.[42]

Here, the error of instructing the jury on the now-invalid predicate was harmless to Stone because the jury found facts "satisfying the essential elements of guilt" on the valid predicate of substantive murder in aid of racketeering "that would [have] sustain[ed] a lawful conviction" on the firearm offense.[43]   Because Count 13 directed the jury to look to Count 12 (the substantive murder

---

[38] *United States v. Laurent*, 33 F.4th 63, 86 (2d Cir. 2022).

[39] 2 F.4th 27 (2d Cir. 2021).

[40] *Id.* at 38.

[41] *Id.* at 36.

[42] *See, e.g.*, *Laurent*, 33 F.4th at 87; *United States v. White*, 7 F.4th 90, 104 (2d Cir. 2021) (determining that the § 924(c) conviction should stand if an indictment alleged two predicate crimes of violence for the § 924(c) count, one of which had since been determined to be an invalid predicate, if there was evidence that a defendant committed the still-valid predicate offense); *United States v. Dussard*, 967 F.3d 149, 156–58 (2d Cir. 2020) (determining that a defendant was not prejudiced by a § 924(c) conviction predicated on an invalid crime of violence offense after looking at the record and determining that there was sufficient evidence to support the conviction based on a different offense).

[43] *Laurent*, 33 F.4th at 86.

in aid of racketeering charge) as a predicate crime of violence, in returning a guilty verdict on Count 13 the jury could have actually found that he used a firearm in relation to that crime. Even without that possibility, however, there is ample evidence in the record that a properly instructed jury would have found that to be the case beyond a reasonable doubt. First, the jury convicted Stone of the substantive murder of Jamel Washington.[44] Second, the uncontroverted evidence at trial was that Stone killed Washington with a gun that he had borrowed for that purpose.[45] We are convinced that the jury, if properly instructed as to Count 13, would have found beyond a reasonable doubt that Stone "committed the crime of violence in the murder of [Washington], and that the crime was committed by the use of a firearm."[46]

Stone was therefore not prejudiced by the invalid jury instruction that conspiracy to murder in aid of racketeering qualified as a crime of violence, given his conviction of murder in aid of racketeering and uncontroverted evidence that he used a gun to commit that crime.

## II. Section 924(c) Conviction Predicated on Substantive Murder

Stone alternatively argues that his § 924(c) conviction should be vacated even if it was predicated only on his § 1959 conviction for murder in aid of racketeering in violation of N.Y. Penal Law § 125.25(1). He argues that a defendant may be convicted under § 125.25(1), murder in the second degree, based on a culpable

---

[44] App. at 196–97.

[45] App. at 256–57.

[46] *Laurent*, 33 F.4th at 89.

omission, and therefore the statute does not categorically involve the "use" of force as required for a crime of violence.

This Court, sitting en banc in *United States v. Scott*, rejected this very argument.[47] We held that first-degree manslaughter under N.Y. Penal Law § 125.20(1) necessarily involves the use of force, regardless of whether the offense could be committed by omission, and so is categorically a violent felony.[48] To hold otherwise would "preclude courts from recognizing even intentional murder as a categorically violent crime because, presumably, it is just as possible for a defendant to cause a person's death by omission when the defendant's specific intent is to kill, *see* N.Y. Penal Law § 125.25(1) (second-degree murder), as when his specific intent is to cause serious physical injury, *see id.* § 125.20(1) (first-degree manslaughter)."[49]

---

[47] *Scott* addressed whether first-degree manslaughter in New York qualifies as a violent felony under the ACCA. 900 F.3d 98–99. A violent felony for purposes of the ACCA is a crime that, among other things, "has as an element the use, attempted use, or threatened use of physical force against the *person* of another." 18 U.S.C. § 924(e)(2)(B)(i) (emphasis added). That provision thus employs language identical to that used in § 924(c)(3)(A), except that in the latter, "crime of violence" is defined to include crimes having as an element the actual, attempted, or threatened use of physical force "against the *person or property* of another." 18 U.S.C. § 924(c)(3)(A) (emphasis added); *see also United States v. Hill*, 890 F.3d 51, 57 n.8 (2d Cir. 2018). Force against property is not at issue here. Accordingly, whether an offense qualifies as a violent felony under the ACCA in *Scott* is binding precedent here, when the crime of violence is against another person.

[48] *Scott*, 990 F.3d at 99–101; *see also id.* at 127 (Menashi, J., concurring in part and concurring in the judgment) (agreeing that "first-degree manslaughter in violation of section 125.20(1) of the New York Penal Law is a violent felony . . . because it has as an element the use of physical force against the person of another even though it may be committed by omission") (internal quotation marks, alterations, and citation omitted).

[49] *Id.* at 100 (majority opinion).

As Stone concedes, the elements of first-degree manslaughter and second-degree murder differ only with respect to the intent element—whether the defendant had the intent either to cause serious physical injury (manslaughter) or to cause death (second-degree murder).[50] Because the intent element played no part in the *Scott* court's analysis of whether first-degree manslaughter is a violent felony, its reasoning binds us with respect to whether second-degree murder is a crime of violence. Thus, second-degree murder is categorically a crime of violence under § 924(c).

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[50] Appellant's Br. at 36.