21-1486-cr
*United States v. Davis*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM 2022

ARGUED: OCTOBER 27, 2022
DECIDED: JULY 18, 2023

No. 21-1486

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

KAREEM DAVIS,
*Defendant-Appellant.*[*]

————

Appeal from the United States District Court
for the Southern District of New York.

————

Before: WALKER, LEE, and ROBINSON, *Circuit Judges.*

————

Defendant-Appellant Kareem Davis appeals from a judgment of conviction entered by the United States District Court for the Southern District of New York (Schofield, *J.*) after a jury found him

[*] The Clerk of Court is respectfully directed to amend the caption accordingly.

guilty of racketeering conspiracy (Count One); murder in aid of racketeering (Count Two); and using a firearm during and in relation to a crime of violence (Count Three). Davis argues that his Count Three conviction must be vacated because his predicate offense of murder in aid of racketeering was not a crime of violence. We disagree.

We reject the other arguments raised in Davis's appeal in a summary order filed concurrently with this opinion. Accordingly, we **AFFIRM** the judgment of the district court.

————

JORDAN ESTES (Christopher Clore, Alexandra Rothman, Stephen J. Ritchin, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Appellee the United States of America.*

RICHARD H. ROSENBERG, New York, NY, *for Defendant-Appellant Kareem Davis.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

Defendant-Appellant Kareem Davis appeals from a judgment of conviction entered by the United States District Court for the Southern District of New York (Schofield, *J.*) after a jury found him guilty of racketeering conspiracy (Count One); murder in aid of racketeering (Count Two); and using a firearm during and in relation to a crime of violence (Count Three). Davis argues that his Count

Three conviction must be vacated because his predicate offense of murder in aid of racketeering was not a crime of violence. We disagree.

We reject the other arguments raised in Davis's appeal in a summary order filed concurrently with this opinion. Accordingly, we **AFFIRM** the judgment of the district court.

## BACKGROUND

In 2018, Davis was indicted for multiple offenses arising from his alleged membership in Killbrook, a criminal gang that operated in the South Bronx, New York, and his participation in the 2011 gang-related murder of Bolivia Beck, the girlfriend of a rival gang member. As relevant here, Count Two of the indictment charged Davis with murder in aid of racketeering ("VICAR murder") pursuant to 18 U.S.C. § 1959(a)(1), in violation of N.Y. Penal Law §§ 125.25, 125.27, and 20.00.[1] Count Three charged Davis with using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a crime of violence, "namely, the murder in aid of racketeering charged in Count Two," in violation of 18 U.S.C. § 924(c).[2]

At trial, the government presented evidence that Davis, along with his brother, Killbrook member Gary Davis, participated in a

---

[1] "VICAR" is the acronym for "violent crimes in aid of racketeering," prohibited by 18 U.S.C. § 1959.

[2] App'x 30–31. The indictment charged Davis with, and he was convicted of violating, § 924(j)(1), which authorizes the death penalty or "imprisonment for any term of years or for life" for murder committed "in the course of a violation of subsection (c)." 18 U.S.C. § 924(j)(1). We have held that § 924(j) incorporates the entirety of § 924(c). *United States v. Barrett*, 937 F.3d 126, 129 n.2 (2d Cir. 2019).

3

retaliatory shooting targeting Joey Colon, a rival gang member. The shooters missed their intended target, striking instead Colon's girlfriend, who died of her injuries.

The jury found Davis guilty on all counts. The district court sentenced Davis to life imprisonment on Count Two, and 30 years on each of Counts One and Three, to be served concurrently.

## DISCUSSION

On appeal, Davis argues that his Count Three conviction for using a firearm during and in relation to a crime of violence must be vacated because the predicate offense upon which it was based— VICAR murder—is not a "crime of violence" within the meaning of § 924(c). Whether an offense is categorically a crime of violence is a question of law that the court reviews *de novo*.[3]

### A.    The Categorical and Modified Categorical Approaches

Section 924(c) provides for mandatory minimum sentences for a defendant "who, during and in relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."[4] A "crime of violence" is defined as a felony that either "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or "(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."[5] In *United States v. Davis*, the Supreme Court found the latter, "residual" clause of the statute,

---

[3] *United States v. Morris*, 61 F.4th 311, 316 (2d Cir. 2023).

[4] 18 U.S.C. § 924(c)(1)(A).

[5] *Id.* § 924(c)(3)(A)–(B).

4

§ 924(c)(3)(B), to be unconstitutionally vague.[6]  Thus, we may sustain Davis's § 924(c) conviction only if it was predicated on a crime of violence under § 924(c)(3)(A), the statute's "elements" or "force" clause.[7]

"To determine whether an offense is a crime of violence under the elements [or 'force'] clause, courts employ what has come to be known as the 'categorical approach.'"[8]  Under the categorical approach, a court identifies the minimum conduct necessary to support conviction under a particular statute, looking only to the statutory definitions and not the defendant's underlying conduct.[9] The court assesses "the elements of the statutory offense of which the defendant has been convicted, and compare[s] them to the generic federal definition of a 'crime of violence.'"[10]  If the statute of conviction "criminalizes *any* conduct that would not fall within the scope of . . . the force clause" then "a conviction under the [statute of conviction] is not categorically a crime of violence and cannot serve as a predicate offense" for purposes of § 924(c).[11]  In other words, a statute of conviction that "sweeps more broadly than" the force clause is not a categorical match and cannot count as a § 924(c) predicate.[12]

Certain statutes demand a more detailed inquiry at the threshold.  When a statute "'list[s] elements in the alternative, and

---

[6] 139 S. Ct. 2319, 2336 (2019).  The decision involved a different defendant named Davis with no relation to Defendant-Appellant here.

[7] *See Morris*, 61 F.4th at 316.

[8] *United States v. Pastore*, 36 F.4th 423, 428 (2d Cir. 2022) (internal quotation marks omitted); *see Mathis v. United States*, 579 U.S. 500, 504–05 (2016).

[9] *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018).

[10] *Stone v. United States*, 37 F.4th 825, 830 (2d Cir.), *cert. denied*, 143 S. Ct. 396 (2022).

[11] *United States v. Jones*, 878 F.3d 10, 16 (2d Cir. 2017).

[12] *Descamps v. United States*, 570 U.S. 254, 261 (2013).

thereby define[s] multiple crimes,' we have deemed the statute to be divisible and applied a 'modified' categorical approach."[13] The modified categorical approach allows us to examine "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of."[14] "We then return to the categorical analysis and compare the elements of the offense of conviction with section 924(c)(3)(A)'s definition of a crime of violence."[15]

Davis submits that the VICAR murder statute is indivisible because "it creates a single crime—murder—and specifies various means by which the offense may be committed."[16] Accordingly, he argues that we need only apply the categorical approach and determine whether the generic, federal definition of second-degree murder is a crime of violence under § 924(c). He contends that the generic, federal definition includes reckless conduct, but that § 924(c) more narrowly requires intentional conduct, and thus VICAR murder is not a crime of violence. The government urges the court to find the statute divisible and subject to the modified categorical approach "because it plainly sets out multiple sets of alternative elements."[17]

Our precedent squarely answers this question in the government's favor. In *United States v. Pastore*, we considered "whether a substantive VICAR count for attempted murder in aid of

---

[13] *Pastore*, 36 F.4th at 428 (quoting *Mathis*, 549 U.S. at 505); *see Descamps*, 570 U.S. at 261–62.

[14] *Jones*, 878 F.3d at 16 (quoting *Mathis*, 579 U.S. at 505–06).

[15] *Pastore*, 36 F.4th at 428 (internal quotation marks omitted).

[16] Appellant's Br. 42.

[17] Government's Br. 30.

racketeering . . . may constitute a valid predicate crime of violence for purposes of section 924(c)."[18]  In determining what approach should govern our analysis, we held that "the modified categorical approach applies to substantive VICAR offenses."[19]  We noted that this court has held that substantive RICO[20] offenses are subject to the modified categorical approach, and that the same rationale applied to substantive VICAR offenses, as "VICAR complements RICO, and the statutes are similarly structured"—for example, by requiring the underlying predicate crimes to "be identified in the charging instrument."[21]  We therefore reject Davis's contention that the VICAR murder statute is indivisible, and hold that the modified categorical approach applies to our consideration of whether his conviction for murder in aid of racketeering, a substantive VICAR offense, constitutes a crime of violence for purposes of § 924(c).[22]

### B.      Whether Davis's VICAR Murder Conviction Qualifies as a Crime of Violence Under § 924(c)

Applying the modified categorical approach, we must first "determine what crime, with what elements, [Davis] was convicted of."[23]  Because a "substantive VICAR offense 'hinge[s] on' the

---

[18] 36 F.4th at 428.

[19] *Id.* at 429.

[20] "RICO" is the acronym for the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968.

[21] *Pastore*, 36 F.4th at 429 (quoting *United States v. Laurent*, 33 F.4th 63, 89 (2d Cir. 2022)).

[22] We note, as we concluded in *Pastore*, that the New York second-degree murder statute that defines the predicate offense for Davis's VICAR murder conviction is itself divisible and amenable to the modified categorical approach insofar as it lists elements for second-degree murder in the alternative.  *Id.* at 429 n.4.

[23] *Jones*, 878 F.3d at 16 (internal quotation marks omitted) (quoting *Mathis*, 579 U.S. at 505–06).

underlying predicate offense, . . . 'we look to th[at] predicate offense[ ] to determine whether' [Davis] was charged with and convicted of a crime of violence."[24] Davis's VICAR murder conviction "hinged on" his having committed the underlying predicate offense of second-degree murder in violation of New York law.

Davis and the government dispute whether Davis was convicted of intentional murder or depraved indifference murder under New York's second-degree murder statute.[25] This distinction is critical to what remains of Davis's argument, because he contends that depraved indifference murder under New York law requires a minimum *mens rea* of recklessness, sweeping more broadly than what he argues is the force clause's requirement of intent.[26] Thus, according to Davis, depraved indifference murder cannot constitute a crime of violence under § 924(c).

The government counters that Davis was plainly convicted of intentional murder under New York law. It then argues in the alternative that even if Davis had been convicted of depraved indifference murder, such murder is a crime of violence because it requires a *mens rea* of not "ordinary recklessness," but "extreme recklessness" or "depraved heart"—a highly culpable mental state that "approach[es] intent or knowledge."[27] We need not reach the

---

[24] *Pastore*, 36 F.4th at 429 (quoting *United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 2009)).

[25] *Compare* N.Y. Penal Law § 125.25(1), *with id.* § 125.25(2).

[26] *See Borden v. United States*, 141 S. Ct. 1817, 1834 (2021) ("Offenses with a *mens rea* of recklessness do not qualify as violent felonies under ACCA [the Armed Career Criminal Act]. They do not require, as ACCA does, the active employment of force against another person."); *United States v. Castleman*, 572 U.S. 157, 169 & n.8 (2014) ("merely reckless [conduct] may not be a 'use' of force").

[27] Government's Br. 36–38.

government's alternative argument, however, because the record is clear that Davis was convicted of second-degree intentional murder under New York law.

The modified categorical approach permits us to "peer into the record to see which of the multiple crimes was implicated."[28] The indictment alleged that Davis committed VICAR murder in that he, in violation of New York law, "(i) with intent to cause the death of another person, . . . caused the death of Bolivia Beck; and (ii) under circumstances evincing a depraved indifference to human life, . . . recklessly engaged in conduct which created a grave risk of death to another person, and thereby caused the death of Beck."[29] This language parallels New York's second-degree murder statute, which provides that a person is guilty of second-degree murder when (1) "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person" or (2) "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."[30] The government agrees that the indictment charged Davis with both second-degree intentional and depraved indifference murder as predicate offenses to VICAR murder.

We must determine not simply the crime with which Davis was charged, however, but "what crime, with what elements, [he] was *convicted* of."[31] To do this, we look to other elements of the record,

---

[28] *Jones*, 878 F.3d at 16.

[29] App'x 29–30.

[30] N.Y. Penal Law § 125.25(1)–(2).

[31] *Jones*, 878 F.3d at 16 (emphasis added) (internal quotation marks omitted) (quoting *Mathis*, 579 U.S. at 505–06).

such as the jury instructions.[32]  Here, the district court's jury charge on VICAR murder, Count Two, instructed that, "[u]nder New York Law, murder requires proving that a person, one, caused the death of a victim; and two, with the intent of causing the victim's death or another person's death."[33]  The district court did not give an instruction on Count Two regarding depraved indifference murder or its statutory reference to recklessness as charged in the indictment. Nor was the indictment sent to the jury.[34]  It follows from these instructions that the jury "necessarily found" that Davis intended to cause death.[35]

We therefore proceed to consider whether second-degree intentional murder under N.Y. Penal Law § 125.25(1), of which Davis was convicted as a predicate to VICAR murder, is a crime of violence under § 924(c)'s force clause.  We find that it is.

"There is no question that intentionally causing the death of another person involves the use of force."[36]  This court, sitting *en banc* in *United States v. Scott*, applied this principle to hold that first-degree

---

[32] *See id.*

[33] App'x 250; *see also id.* ("It is sufficient that at the moment of murder a person intends to cause another person's death.").

[34] Davis points the court to the jury instructions on Count Three in contending that the district court instructed the jury on recklessness.  However, the district court there referenced "reckless disregard of the serious risk [Davis's] actions posed to another's life" in providing the federal definition of murder as an element of the § 924(c) count, Count Three, *not* the VICAR murder count.  The district court made clear that the jury was to proceed to Count Three only if it found Davis guilty of Count Two, VICAR murder, for which it instructed only on intentional murder.

[35] *Mathis*, 579 U.S. at 505; *see Pastore*, 36 F.4th at 429 n.4 (finding that "the district court's jury instructions made clear that [the defendant] was convicted under § 125.25(1)" when, as here, they instructed that the defendant must have had "the intent to cause the death of the victim or another person").

[36] *Pastore*, 36 F.4th at 429 (citing *Castleman*, 572 U.S. at 169).

manslaughter under New York law is a crime of violence.[37]   That is so because first-degree manslaughter, regardless of whether it may be completed by commission or omission, "can only be committed by a defendant who causes death—the ultimate bodily injury—while intending to cause at least serious physical injury," necessarily requiring the use of physical force.[38]   To hold otherwise "would preclude courts from recognizing even intentional murder as a categorically violent crime," an untenable consequence.[39]   The court further noted, citing N.Y. Penal Law § 125.25(1) for comparison, that first-degree manslaughter under New York law "is a homicide crime second only to murder in its severity."[40]   It follows logically from this precedent that second-degree intentional murder—a crime more serious than first-degree manslaughter that definitionally requires the use of force—is categorically a crime of violence under § 924(c).

We have so held following *Scott*.   In *Pastore*, we held that a substantive VICAR conviction predicated on *attempted* second-degree murder under N.Y. Penal Law § 125.25(1) is categorically a crime of violence for purposes of § 924(c).[41]   Indispensable to this holding was our acceptance, relying on *Scott*, that "second degree murder under New York law is a crime of violence."[42]   And in *Stone v. United States*, we found so directly, noting that "the elements of first-degree

---

[37] 990 F.3d 94, 98–101 (2d Cir.) (en banc) (holding that first-degree manslaughter under N.Y. Penal Law § 125.20(1) is a crime of violence), *cert. denied*, 142 S. Ct. 397 (2021).  As we noted in *Stone v. United States*, *Scott*'s analysis of a "violent felony" under the ACCA is binding upon our analysis of a crime of violence under § 924(c) when, as here, the crime of violence is against another person.  37 F.4th at 832 n.47.

[38] *Scott*, 990 F.3d at 100.

[39] *Id.*

[40] *Id.* at 98–99 & n.1 (quoting N.Y Penal Law § 125.25(1)).

[41] 36 F.4th at 429–30.

[42] *Id.* at 430.

manslaughter [as found to be a crime of violence in *Scott*] and second-degree murder [under N.Y. Penal Law § 125.25(1)] differ only with respect to the intent element—whether the defendant had the intent either to cause serious physical injury (manslaughter) or to cause death (second-degree murder). . . . Thus, second-degree murder is categorically a crime of violence under § 924(c)."[43] Therefore, Davis's conviction for VICAR murder, predicated on second-degree intentional murder under N.Y. Penal Law § 125.25(1), categorically qualifies as a crime of violence under § 924(c).

## CONCLUSION

For the foregoing reasons and those set forth in the accompanying summary order filed concurrently with this opinion, we **AFFIRM** the judgment of the district court.

---

[43] 37 F.4th at 833; *see also Moore v. United States*, No. 16-3715-PR, 2021 WL 5264270, at *2 & n.1 (2d Cir. Nov. 12, 2021) (summary order) ("[O]ur case law makes clear that intentional murder as defined in NYPL § 125.25(1) is itself a crime of violence." (citing *Scott*, 990 F.3d at 100)).