# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term 2021

No. 21-932(L), 21-937(CON), 21-950(CON), 21-992(CON), 21-1548(CON)

-

NARDINO COLOTTI, ALEX RUDAJ, PRENKA IVEZAJ, NIKOLA DEDAJ, ANGELO DIPIETRO,

*Petitioners-Appellants,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

---

Appeal from the United States District Court
for the Southern District of New York
No. 04 Cr. 110 (DLC), 11 Civ. 1782 (DLC), 11 Civ. 1510 (DLC), 11 Civ. 1402 (DLC),
11 Civ. 1556 (DLC), 20 Civ. 4889 (DLC)
Denise L. Cote, District Judge, Presiding.
(Argued June 2, 2022; Decided June 21, 2023)

1

Before:    LEVAL, PARKER, and MENASHI, *Circuit Judges.*

Petitioners-Appellants appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *J.*) denying their petitions brought pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct their convictions under 18 U.S.C. § 924(c). The district court held that their substantive RICO convictions, on which their § 924(c) convictions were based, were valid "crimes of violence." Because we are confident that a properly instructed jury would have based the petitioners' § 924(c) convictions upon a valid predicate crime of violence, we **AFFIRM.**

---

EDWARD S. ZAS, (David E. Patton, *on the brief),* Federal Defenders of New York, Inc., New York, N.Y. *for Petitioners-Appellants Nardino Colotti, Alex Rudaj, and Nikola Dedaj,*

Michael S. Schacter and Ravi Chaderraj, Willkie Farr & Gallagher LLP, New York, N.Y. *for Petitioner-Appellant Prenka Ivezaj,*

Anthony DiPietro, Law Offices of Anthony DiPietro P.C., White Plains, N.Y. *for Petitioner-Appellant Angelo DiPietro,*

ANDREW JONES (Karl Metzner, *on the brief), for* Damian Williams, United States Attorney for the Southern District of New York, New York, N.Y. *for Respondent-Appellee.*

---

BARRINGTON D. PARKER, Circuit Judge:

Nardino Colotti, Alex Rudaj, Nikola Dedaj, Prenka Ivezaj, and Angelo DiPietro filed successive habeas corpus petitions challenging their convictions and mandatory sentences imposed by the United States District Court for the Southern District of New York (Cote, *J.*). This appeal focuses on their convictions under Count Thirteen of the indictment, which charged them with using and carrying firearms during and in relation to a crime of violence, 18 U.S.C. § 924(c), based on an offense charged in Count One, racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). The predicate acts underlying the RICO charge included two offenses (Racketeering Acts Four and Five) consisting of either second degree grand larceny by extortion under New York law, or conspiracy or attempt to commit that offense. The jury expressly found Racketeering Acts Four and Five to have been proven as to all defendants charged. Although there were other predicates to the RICO offense charged in Count One, these are the only predicates which the government contends can constitute a "crime of violence" within the meaning of § 924(c)(3)(A).

In January 2006 a jury convicted defendants on all but one of the fifteen counts charged in the indictment. We affirmed the convictions on direct appeal.

3

*United States v. Ivezaj*, 568 F.3d 88 (2d Cir. 2009); *United States v. Ivezaj*, 336 F. App'x 6 (2d Cir. 2009). We upheld the petitioners' § 924(c) convictions under Count Thirteen, finding that its predicates conformed to the definition of a crime of violence. *Ivezaj*, 568 F.3d at 96. Because intervening decisions of the Supreme Court have altered the test for determining whether an offense is a "crime of violence," *see United States v. Taylor*, 142 S. Ct. 2015, 2021 (2022); *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), that ruling is no longer binding on us. The issue requires a new analysis to ensure that the convictions can stand under the newly explained requirements.

In 2011, defendants petitioned pursuant to 28 U.S.C. § 2255 to vacate their convictions on the ground of ineffective assistance of counsel. Judge Cote denied the petitions and declined to issue Certificates of Appealability. In 2016, following the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), the petitioners asked this Court for permission to file this successive petition in district court to vacate their Count Thirteen convictions for violation of 18 U.S.C. § 924(c) on the ground that substantive RICO did not qualify as a crime of violence. We allowed the filing of the successive petition. Judge Cote then denied relief, concluding that the petitioners' substantive RICO and New York extortion

4

offenses qualified as crimes of violence and that any instructional errors were harmless, but granted Certificates of Appealability. The petitioners then filed this appeal.

The jury was instructed that it could base the petitioners' § 924(c) convictions upon a predicate offense, which, according to the Supreme Court's subsequent interpretations of the term, was not a "crime of violence." The jury's findings rendered under those (later determined to be erroneous) instructions do not specify whether it found that the defendants committed a variation of New York larceny by extortion that necessarily requires the actual or threatened use of force. Nor did the written jury findings specify whether the predicate offense related to second degree grand larceny by extortion was the substantive offense, or conspiracy or attempt to commit the offense. Nonetheless, reviewing the jury's verdict in relation to the evidence presented at trial, we conclude with a high degree of confidence that, if properly instructed, the jury would have predicated the petitioners' § 924(c) convictions on a valid crime of violence. We therefore affirm the district court's denial of relief.

**BACKGROUND**

In the trial in late 2005 and early 2006, the jury convicted defendants of fourteen out of fifteen counts of crimes arising from their participation in a criminal enterprise known as the Rudaj Organization, an organized crime syndicate that, among other things, controlled illegal gambling operations in the New York City area.

The issues raised on appeal center on Count One, which charged defendants with racketeering in violation of RICO (18 U.S.C. § 1962(c)), and Count Thirteen, which charged defendants, under 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2, with possessing, using, or carrying a firearm in relation to a federal "crime of violence," namely, the racketeering charge in Count One.

Count One alleged fourteen separate racketeering acts. This appeal concerns Acts Four and Five. Act Four charged defendants (except Colotti) with three related offenses: substantive second degree grand larceny by extortion under N.Y. Penal Law §§ 155.05 & 155.40; attempted second degree grand larceny by extortion under N.Y. Penal Law §§ 110.00, 155.05, & 155.40; and conspiracy to commit second degree grand larceny by extortion under N.Y. Penal Law §§ 105.13, 155.05, & 155.40. The indictment specified that any one of these offenses "alone constitutes

the commission of Racketeering Act Four." Act Four, according to the indictment, was based on conduct "instilling [in two victims] a fear that the defendants would damage property and cause physical injury to some person in the future" and "wrongfully tak[ing] and obtain[ing], and attempt[ing] to take and obtain, the property of" those victims.

Act Five similarly charged all defendants with the same three New York criminal offenses as in Act Four and similarly alleged that any one of these offenses "alone constitutes the commission of Racketeering Act Five." It asserted as a basis conduct "instilling a fear [in the managers of an illegal gambling club called Soccer Fever] that the defendants would damage property and cause physical injury to some person in the future."

As noted, defendants' convictions were all affirmed on direct appeal and defendants' initial § 2255 petitions alleging ineffective assistance of counsel were also denied. Further, after *Johnson* struck down 18 U.S.C. § 924(e)(2)(B)(ii), the residual clause of the Armed Career Criminal Act ("ACCA") as void for vagueness, *Johnson v. United States*, 576 U.S. 591, 597 (2015), and *Davis* applied *Johnson* to 18 U.S.C. § 924(c)(3)(B)'s residual clause, *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), defendants obtained our permission to file successive § 2255

petitions challenging the validity of their convictions under Counts One and Thirteen as well as the corresponding jury instructions on those charges. The district court denied the petitions but granted Certificates of Appealability.

This appeal followed. We review legal determinations de novo. *Nunez v. United States*, 954 F.3d 465, 469 (2d Cir. 2020) (citing *Sapia v. United States*, 433 F.3d 212, 216 (2d Cir. 2005)).

## DISCUSSION

## I

Under 18 U.S.C. § 924(c)(1)(A), criminal defendants are subject to mandatory, consecutive, enhanced punishment for "us[ing] or carr[ying] a firearm" "during and in relation to any crime of violence." The enhanced punishment mandates a sentence of at least five years in custody, increased to seven years if the firearm is brandished. *Id.* §§ 924(c)(1)(A)(i), (c)(1)(A)(ii). For purposes of these enhancements, the statute defines "crime of violence" in two subparts—the first known as the elements clause, § 924(c)(3)(A), and the second the residual clause, § 924(c)(3)(B). According to those clauses, a crime of violence is a felony offense that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3). Following the Supreme Court's decision in *Davis*, which struck down Subparagraph B, the residual clause, as unconstitutionally vague, only the elements clause, Subparagraph A, remains valid. 139 S. Ct. at 2323–24.

We ordinarily apply the categorical approach in determining whether a predicate offense qualifies as a crime of violence under the elements clause. *United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022). Under this approach, we ask whether "*categorically*, that is to say, in every instance by its very definition, [the offense] involves the use of force." *United States v. Martinez*, 991 F.3d 347, 353 (2d Cir. 2021).

There is, however, an exception for divisible statutes. When a crime is defined with alternative elements that are divisible, we apply a modified categorical approach by consulting a limited set of documents – including the indictment, verdict form, and jury instructions – to determine which of the alternative branches of the statute's prohibitions was the basis of the defendant's conviction, then assessing whether the elements of that branch of the offense can be satisfied by conduct that would fall outside the definition of a "crime of violence" provided by § 924(c)(3)(A). *See Descamps v. United States*, 570 U.S. 254,

9

257 (2013); *United States v. Laurent*, 33 F.4th 63, 85 (2d Cir.), *cert. denied*, 143 S. Ct. 394, *and cert. denied sub nom. Ashburn v. United States*, 143 S. Ct. 462 (2022). With this background in mind, we address whether the petitioners' substantive RICO convictions and related predicate acts of New York larceny by extortion qualify as crimes of violence under § 924.

## II

The § 924(c) offense under which the petitioners were convicted was Count Thirteen. It charged that the defendants used or carried a firearm during and in relation to a crime of violence. The crime of violence charged as the basis for the § 924(c) conviction was the RICO offense charged in Count One, a violation of 18 U.S.C. § 1962(c), predicated on Racketeering Acts 4 and 5, which in turn charged violations of N.Y. Penal Law § 155.40, the New York penal statute defining second degree grand larceny by extortion, or alternatively conspiracy or attempt to violate that statute. Because both RICO and New York larceny by extortion can be committed in various ways, some of which require force while others do not, the government cannot sustain the conviction under § 924(c) unless both the RICO offense under § 1962(c) and the New York extortion statute are divisible. Petitioners argue that both statutes are indivisible and contend that we must

conclude under the categorical approach that Count Thirteen does not charge a crime of violence.

The Supreme Court has clarified the applicability of the modified categorical approach in several decisions. Notably, in *Descamps v. United States*, 570 U.S. 254, 261–63 (2013), the Supreme Court explained that courts must apply the modified categorical approach when the defendant is convicted under a divisible statute. Sentencing courts must begin by analyzing the divisibility of a statute to determine whether to apply the modified categorical approach.

We find that these clarifications do not affect our ultimate determination that a substantive RICO offense is a crime of violence if the RICO conviction is based on an offense that itself constitutes a crime of violence. *Cf. United States v. Brown*, 945 F.3d 72, 76 (2d Cir. 2019) (finding "no persuasive reason to deviate" from *Ivezaj* after *Davis* in the context of calculating a sentence for a RICO conspiracy conviction). Though we did not conduct a divisibility analysis in *Ivezaj*, we did in effect apply the modified categorical approach in finding that the offense in question was a crime of violence. With respect to whether a RICO offense can serve as a crime of violence under § 924(c), we reaffirm for the reasons below that RICO is a divisible statute and that substantive RICO can be a crime of violence

when it is predicated on an offense that necessarily requires an actual, attempted, or threatened use of force. *See Laurent*, 33 F.4th at 88.

The text of § 1962(c) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce" from "conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." The statute defines racketeering activity by listing a series of state or federal crimes, also known as predicate acts, some of which, like murder, involve force and some of which, like counterfeiting, do not. 18 U.S.C. § 1961(1).[1]

---

[1] 18 U.S.C. § 1961(1) provides:

> (1) "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to

financial institution fraud), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581–1592 (relating to peonage, slavery, and trafficking in persons), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), sections 175–178 (relating to biological weapons), sections 229–229F (relating to chemical weapons), section 831 (relating to nuclear materials), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11

13

Defendants contend this broad language indicates that the statute criminalizes a single offense, and that § 1961 merely presents possible means of engaging in racketeering activity but does not list alternative elements, which would mean the statute was unitary and the categorical approach would apply.

The divisibility of RICO, however, is no longer an open question in this circuit. We held in *United States v. Laurent* that RICO is a divisible statute appropriate for use of the modified categorical approach. 33 F.4th at 88; *cf. also Martinez*, 991 F.3d at 359. A conviction for a substantive RICO offense will constitute a crime of violence if the conviction was based on at least one predicate act that can be committed only by use of force. *Laurent*, 33 F.4th at 88. The modified categorical approach requires us to turn to the charged predicate acts that constitute the pattern of racketeering – here, New York larceny by extortion – to

---

(except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B).

determine whether that statute is divisible and, if so, whether any of the predicate

offenses a defendant was found to have committed qualifies as a crime of violence.

### III

The petitioners' § 924(c) convictions cannot be sustained unless the New

York larceny by extortion statute is divisible. The parties dispute whether the

statute is divisible. We conclude that it is. We further conclude that at least one of

the offenses set forth in the statute constitutes a crime of violence.

### A

We begin by laying out the structure of the New York laws defining larceny

by extortion. The statutes setting forth the crime of larceny by extortion under New

York law set forth alternative offenses, each of which is a form of larceny by

extortion, some of which necessarily require the use of force, and some of which

do not. Subdivision 1 of N.Y. Penal Law § 155.05 provides that "a person steals

property and commits larceny when, with intent to deprive another of property or

to appropriate the same to himself or to a third person, he wrongfully takes,

obtains or withholds such property from an owner thereof." Subdivision 2 then

defines larceny to include "a wrongful taking, obtaining or withholding of

another's property, with the intent prescribed in subdivision one of this section,

committed in any of the following ways." Section 155.05(2)(e) defines obtaining

property by extortion as follows:

> A person obtains property by extortion when he compels or induces another person to deliver property to himself or to a third person by means of instilling a fear that, if the property is not so delivered, the actor or another will:
>
> (i) Cause physical injury to some person in the future; or
> (ii) Cause damage to property; or
> (iii) Engage in other conduct constituting a crime; or
> (iv) Accuse some person of a crime or cause criminal charges to be instituted against him; or
> (v) Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule; or
> (vi) Cause a strike, boycott or other collective labor group action injurious to some person's business; except that such a threat shall not be deemed extortion when the property is demanded or received for the benefit of the group in whose interest the actor purports to act; or
> (vii) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or
> (viii) Use or abuse his position as a public servant by performing some act within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely; or
> (ix) Perform any other act which would not in itself materially benefit the actor but which is calculated to harm another person materially with respect to his health, safety, business, calling, career, financial condition, reputation or personal relationships.

N.Y. Penal Law § 155.05(2)(e). Section 155.40 then references several of the acts

from the list in § 155.05(2)(e) to define second degree grand larceny by extortion:

> A person is guilty of grand larceny in the second degree when he steals property and when: . . . .

2. The property, regardless of its nature and value, is obtained by extortion committed by instilling in the victim a fear that the actor or another person will (a) cause physical injury to some person in the future, or (b) cause damage to property, or (c) use or abuse his position as a public servant by engaging in conduct within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely.

N.Y. Penal Law § 155.40. Clause (b) of § 155.40(2), covering threats to "cause damage to property," has been construed by the New York courts to include not only threats of physical damage to property, but also threats of economic harm, such as labor stoppages, so that this branch of § 155.40(2) can be violated without threat or use of force. *See People v. Dioguardi*, 168 N.E.2d 683, 688 (N.Y. 1960) ("It is well-settled law in this State that fear of economic loss or harm satisfies the ingredient of fear necessary to the crime."); *People v. Capparelli*, 603 N.Y.S.2d 99, 102, 105 (N.Y. Sup. Ct. 1993) (noting, where defendant made threat of labor "problems" to general contractor victim, that "[f]ear of future economic harm is sufficient to establish" extortionate larceny). The other forms of larceny by extortion set forth in § 155.05(2)(e) are defined as grand larceny in the fourth degree. N.Y. Penal Law § 155.30(6).

An aspect of grand larceny by extortion that is significant in this appeal is that the completed offense requires a jury finding that the defendant succeeded in

obtaining the property of another. *Dioguardi*, 168 N.E.2d at 68 ("The essence of the crime [of extortion] is obtaining property by a wrongful use of fear, induced by a threat to do an unlawful injury."); *cf. People v. Jennings*, 504 N.E.2d 1079, 1086 (N.Y. 1986). Defendants who plan to or endeavor to obtain the property of another (without succeeding in obtaining the property) are perhaps guilty of conspiring to commit larceny by extortion, or of attempt to do so, but not the crime of larceny by extortion. *See People v. Teal*, 89 N.E. 1086, 1092 (N.Y. 1909) (Haight, J., dissenting) (observing that "a person could be convicted of an attempt to commit larceny when there is no property to steal").

Finally, another section of the statute sets forth the pleading requirements for a charge of larceny by extortion. *See* N.Y. Penal Law § 155.45. That section provides:

1. Where it is an element of the crime charged that property was taken from the person or obtained by extortion, an indictment for larceny must so specify. In all other cases, an indictment, information or complaint for larceny is sufficient if it alleges that the defendant stole property of the nature or value required for the commission of the crime charged without designating the particular way or manner in which such property was stolen or the particular theory of larceny involved.

2. Proof that the defendant engaged in any conduct constituting larceny as defined in section 155.05 is sufficient to support any indictment, information or complaint for larceny other than one charging larceny by

extortion. An indictment charging larceny by extortion must be supported by proof establishing larceny by extortion.

*Id.*

**B**

The petitioners argue that New York larceny by extortion is not divisible as between extortion committed by threat of physical injury to a person, N.Y. Penal Law §155.40(2)(a), and extortion committed by threat of damage to property, *id.* § 155.40(2)(b). We disagree.

The statute's text shows that New York extortion is divisible as between the extortion offenses set forth in § 155.05(2)(e) that are punishable as second degree grand larceny and those that are punishable as fourth degree grand larceny. The alternatives listed in §§ 155.05(2)(e) and 155.40 are set apart by the disjunctive phrase "or," in separate sections and subsections. Though such a structure is not necessarily dispositive in finding divisibility, it is at least indicative. *See United States v. Scott*, 990 F.3d 94, 99 n.1 (2d Cir. 2021) (en banc) (New York first-degree manslaughter statute, consisting of three alternative elements separated by "or," is divisible); *United States v. Jones*, 878 F.3d 10, 16–17 (2d Cir. 2017); *Flores v. Holder*, 779 F.3d 159, 166 (2d Cir. 2015) (New York first-degree sexual abuse statute, consisting of four alternative elements separated by "or," is divisible). Three of the

nine forms of extortion enumerated in § 155.05(e) are punishable as second degree grand larceny, whereas the remainder are punishable as fourth degree grand larceny. *See* N.Y. Penal Law §§ 155.30, 155.40. The government identifies New York caselaw treating the variants of extortion set out in § 155.05(e) as distinct offenses. *See People v. Caban*, 696 N.Y.S.2d 1, 2 (App. Div. 1st Dep't 1999) (holding that a grand jury was not required to have been given an affirmative defense instruction applicable to only one form of extortion, when the State charged only a variant of extortion for which the affirmative defense was unavailable, even if the evidence presented suggested that the defendant committed the extortion offense for which the defense was available).

The petitioners suggest that even if the forms of extortion in § 155.05(e) that are punishable as second degree grand larceny are divisible from those that are punished as fourth degree grand larceny, the offense of second degree grand larceny by extortion, N.Y. Penal Law § 155.40, is indivisible because it does not require the jury to find unanimously which form of extortion the defendants employed to commit the larceny. That certain extortion offenses carry greater penalties than others, they contend, "does not show that extortion by instilling fear of 'physical injury to some person,' as described in subsection (i) of § 155.05(2)(e),

20

and extortion by instilling fear of 'damage to property,' as described in subsection

(ii) of § 155.05(2)(e), are divisible *with respect to each other*." Appellants' Br. at 46–

47. To find that the defendants violated § 155.40, the jury was not required to

specify whether the defendants threatened to cause physical injury, cause damage

to property, or abuse a position as a public servant in committing larceny. This

structure, petitioners argue, means that § 155.40 is indivisible and therefore the

categorical approach applies.

We are not convinced, because § 155.40 must be read in conjunction with

§ 155.45, which provides:

1. *Where it is an element of the crime charged that property was taken from the person or obtained by extortion, an indictment for larceny must so specify.* In all other cases, an indictment, information or complaint for larceny is sufficient if it alleges that the defendant stole property of the nature or value required for the commission of the crime charged without designating the particular way or manner in which such property was stolen or the particular theory of larceny involved.

2. Proof that the defendant engaged in any conduct constituting larceny as defined in section 155.05 is sufficient to support any indictment, information or complaint for larceny other than one charging larceny by extortion. *An indictment charging larceny by extortion must be supported by proof establishing larceny by extortion.*

N.Y. Penal Law § 155.45 (emphases added). This New York pleading requirement

for extortionate larceny, unlike some other forms of larceny, necessitates

21

identification of the theory under which the property was stolen. This showing would not be necessary if the statute were indivisible. The fair inference of the requirement that a charge of larceny by extortion "must be supported by proof establishing larceny by extortion" is that the facts establishing the particular charged form of extortion – thus, facts that would differentiate violations of subclauses (a), (b), and (c) of § 155.40(2) from one another – are an element and must be found by the jury. The facts constituting the extortion would make clear which of the alternative versions of extortion was violated and thus permit a determination whether that version can be committed otherwise than by use of force, such that the modified categorical approach properly applies. *See Taylor*, 142 S. Ct. at 2020 (considering federal felony as predicate for § 924 conviction and observing, "The only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force."); *Descamps*, 570 U.S. at 272 ("[W]hy limit the modified categorical approach only to explicitly divisible statutes? The simple answer is: Because only divisible statutes enable a sentencing court to conclude that a jury (or judge at a plea hearing) has convicted the defendant of every element of the generic crime."). That each subclause of

§ 155.40(2) qualifies as grand larceny in the second degree is not dispositive. *See*

*Banks v. United States*, 773 F. App'x 814, 820 (6th Cir. 2019) ("To be sure, if statutory

alternatives carry different punishments, then under *Apprendi* they must be

elements. But the opposite is not true. Just because different punishments

necessarily show *different* offenses does not mean that the same punishment

necessarily shows the *same* offense.") (internal quotation marks, marks indicating

alteration, and citation omitted). The question is whether state law requires the

government to prove the conduct identified in the charged subclause, and we

conclude that it does.

Because N.Y. Penal Law §§ 155.40 and 155.30(6) create distinct offenses, and

we read § 155.45 to clarify that the facts establishing the particular charged form

of extortion are an element and must be found by the jury, we hold that New

York's extortion statute is divisible and apply the modified categorical approach.

## C

Examining the divisible offenses contained in the New York larceny by

extortion statute, it is clear that some forms of larceny by extortion cannot be

committed without the actual or threatened use of force, whereas other forms do

not require force. Larceny by extortion through threat to damage property, N.Y.

Penal Law § 155.40(2)(b), can be accomplished without the actual or threatened use of force and therefore does not constitute a crime of violence. *See Dioguardi*, 168 N.E.2d at 688; *Capparelli*, 603 N.Y.S.2d at 102, 105. The government does not argue otherwise. *See* Appellee's Br. at 26–29. However, larceny by extortion through threat to cause physical injury to a person, N.Y. Penal Law § 155.40(2)(a), cannot be accomplished without a threatened use of force and therefore qualifies as a "crime of violence" under the definition set forth in 18 U.S.C. § 924(c)(3)(A).

We now consider whether the jury found that the defendants committed a crime of violence.

**IV**

In applying the modified categorical approach, we look to, among other documents, the indictment, jury instructions, and verdict form to determine whether the jury convicted each defendant of a crime of violence. *See Descamps*, 570 U.S. at 257. While it is true that the jury's instructions contained two errors, the petitioners have not shown that either error resulted in prejudice that would entitle them to the relief they seek under 28 U.S.C. § 2255.

**A**

In charging the jury as to Count One, which charge applied also to Count Thirteen, the district court instructed the jury that it could convict a defendant of larceny by extortion if it found "that the defendant obtained property from another person . . . by instilling in the victim a fear that the defendant or a third person would *cause physical injury to some person . . ., or cause damage to property*." App'x at A147 (emphasis added). Because, as explained above, larceny by threat of damage to property can be accomplished without use of force, the court's charge erroneously allowed the jury to find the crime of violence required for the § 924(c) conviction based on an offense that could be committed without use or threat of force.

However, an erroneous jury instruction does not *per se* entitle the petitioners to relief under § 2255 if the error had no injurious effect on the verdict. "To determine whether a habeas petitioner was actually prejudiced or the error was harmless, 'a reviewing court finding such [instructional] error should ask whether the flaw in the instructions "had substantial and injurious effect or influence in determining the jury's verdict."'" *Stone v. United States*, 37 F.4th 825, 829 (2d Cir.), *cert. denied*, 143 S. Ct. 396 (2022) (alteration in original) (quoting *Hedgpeth v. Pulido*,

25

555 U.S. 57, 58 (2008) (per curiam)). Where we consider the appeal of a denial of a

§ 2255 motion, as we do here, our inquiry requires us to "review the whole record"

to determine whether an error was prejudicial. *Id.* at 831. We recently observed in

a similar case that,

> in the context of a § 924(c) conviction, where a jury's finding of guilt
> is based on two predicates, only one of which can lawfully sustain
> guilt, we will find the error harmless when the jury would have found
> "the essential elements of guilt on the alternative charged predicate
> that would sustain a lawful conviction" beyond a reasonable doubt.

*Id.* (quoting *Laurent*, 33 F.4th at 86). In *Stone*, the jury had been instructed

erroneously that it could predicate the petitioner's § 924(c) conviction on either of

two offenses it found proven, conspiracy to commit murder in aid of racketeering

(an offense that does not qualify as a crime of violence) or murder in aid of

racketeering (an offense that does qualify), and the verdict on the § 924(c) count

did not specify the predicate crime upon which it was based. *Id.* at 827–28. We

held, nonetheless, that Stone failed to show that this error prejudiced him, because

we concluded that "a properly instructed jury would have found . . . beyond a

reasonable doubt" that Stone used a firearm in relation to the valid predicate crime

of substantive murder: The jury had convicted Stone of substantive murder, and

"the uncontroverted evidence at trial was that Stone killed [the victim] with a gun

26

that he had borrowed for that purpose." *Id.* at 832. We therefore denied Stone's

§ 2255 petition. *Id.* at 832–33.

We have applied a similar standard in reviewing jury instructions for plain

error on direct appeal. In *Laurent*, the defendants-appellants were convicted of

§ 924(c) offenses for which, according to the trial court's erroneous jury

instructions, the predicate crime of violence could have been either a conspiracy

to violate RICO (which could not qualify as a crime of violence) or a substantive

violation of RICO (that could so qualify). 33 F.4th at 85. We upheld two of the

defendants-appellants' § 924(c) convictions because we determined that "the jury

found . . . the elements necessary to convict" of a § 924(c) offense "predicated on

the substantive RICO charge." *Id.* at 89. Although the jury had not found expressly

that these defendants "used or carried a firearm during and in relation to the

commission of the crime of violence" or "possessed a firearm in furtherance of that

crime," we nevertheless observed that "the jury verdict together with the evidence

gives *a very high degree of confidence* that the jury so found." *Id.* at 89–90 (emphasis

added). The jury, in finding these defendants guilty of a substantive RICO offense,

had found proven beyond a reasonable doubt that both defendants committed

distinct murders. *Id.* Both murders were undisputedly committed using firearms,

and the jury heard testimony that each defendant used or possessed a firearm in connection with the murders they respectively committed. *Id.* Because the jury verdict and the trial evidence thus "g[ave] a very high degree of confidence that the jury . . . found" that the two defendants used or carried a firearm during and in relation to the commission of a crime of violence, or possessed a firearm in furtherance of that crime, the defendants failed to show plain error that "affect[ed] [their] substantial rights," and we affirmed their § 924(c) convictions. *Id.* at 90.

As in *Stone* and *Laurent*, the verdict and the trial evidence here give us a high degree of confidence that a properly instructed jury would have convicted the defendants on Count Thirteen based on a valid predicate crime of violence: New York larceny by extortion through threat of injury to a person, N.Y. Penal Law § 155.40(2)(a). The evidence presented to the jury overwhelmingly showed that the petitioners made threats of physical injury in connection with Racketeering Acts Four and Five. The jury heard testimony from Mikhail Hirakis, a victim of the incident at the Soccer Fever gambling club that formed the basis of Racketeering Act Five. Hirakis testified that the club was stormed by a group of "15 people . . . with guns" who shut down the gambling operation that night. That group included all the petitioners. Hirakis testified that the petitioners and their

28

associates "were pointing to us with their Uzi and the pistols." Hirakis further testified that, when Soccer Fever was stormed, "we were threatened by 15 guns and an Uzi" and that the petitioners beat him and bludgeoned him in the head with a gun, causing Hirakis to seek medical treatment.[2] Another witness testified that after beating Hirakis, several members of the Rudaj Organization announced to the gamblers that "[i]f they catch any one of those players at another barbut [dice game] other than [the Rudaj Organization's gambling establishment], they're going to take care of every single one of them that goes to another barbut." Rudaj stated to the club's patrons, "I don't want to see nobody here. If I see [you] one more time, I swear to God . . . I beat you . . . one by one. I eat you up . . . . It's closed." *Ivezaj*, 568 F.3d at 92 (alteration and omissions in original).

---

[2] Count Four of the indictment charged all petitioners with assaulting Hirakis by "str[iking] [him] in the head with a firearm." The jury acquitted the petitioners on that count. The petitioners argue that this aspect of the verdict "suggests that the jury . . . may have harbored reasonable doubt as to the substantive extortion charged in Racketeering Act Five, and that it may have found Racketeering Act Five '[p]roven' based on extortion conspiracy only." Appellants' Br. at 59. But substantive extortion requires proving that the petitioners *made* threats to "*cause physical injury to some person in the future*," N.Y. Penal Law § 155.40(2)(a) (emphasis added), not that they actually carried out the threatened future violence. Thus, insofar as the jury's acquittal on Count Four undermines confidence that the petitioners *carried out* threats of physical harm that they made during the Soccer Fever incident, it does not address the powerful evidence showing that the petitioners threatened the patrons with physical harm.

The jury also heard testimony that the petitioners beat another victim, Antonios Balampanis, the extortion of whom all but Colotti were charged with in Racketeering Act Four. That testimony included Balampanis's statement that during the beating, "it felt like somebody hit me with a pistol," at which point he lost consciousness. Balampanis was an associate of Fotios Dimopoulos, who supervised gambling operations in Astoria for the Lucchese Crime Family, and the petitioners sought to seize control of these operations. *Ivezaj*, 568 F.3d at 92. Later, Dimopoulos "told Balampanis that his beating had been intended as 'a message' for Dimopoulos, and Dimopoulos never returned to gambling clubs in Astoria following the assault." *Id.*

The jury's express findings conform to the overwhelming evidence that the petitioners threatened physical injury in connection with the acts of extortion that the jury found proven. The jury found specifically that the petitioners brandished firearms while committing an act of extortion under New York law. The court instructed the jury that "[t]o 'brandish' a firearm means to display all or part of it, or to otherwise make its presence known to another person in order to intimidate or advise that person that violence is imminently and immediately available." Although a firearm could, in theory, be brandished to threaten damage to property

alone, the evidence showing that the petitioners made threats of physical injury makes it highly unlikely that the jury would have premised the Count 13 convictions upon the brandishing of a firearm solely to threaten damage to property.

Thus, looking to the verdict and the record as a whole, we have a "high degree of confidence that the jury . . . found" that the petitioners' § 924(c) convictions were predicated upon a New York larceny by extortion offense that involves threats of physical injury, N.Y. Penal Law § 155.40(2)(a), as opposed to threats of harm to property, N.Y. Penal Law § 155.40(2)(b), and that a properly instructed jury would have so found. *See Laurent*, 33 F.4th at 90.

However, our inquiry does not end here. To evaluate whether the jury instructions prejudiced the petitioners, we must also ask whether we can be confident that a properly instructed jury would have predicated the petitioners' Count 13 convictions upon a finding that the petitioners committed *the completed offense* of larceny by extortion through threats to cause physical injury, as opposed to an inchoate variation of that offense, such as conspiracy or attempt to commit larceny by extortion.

31

**B**

A second aspect of the court's instructions to the jury proved to be erroneous in light of subsequent Supreme Court decisions. The indictment charged that Racketeering Acts Four and Five, relating to larceny by extortion, could be accomplished in any of three ways -- either by conspiracy to commit larceny by extortion, attempted larceny by extortion, or the substantive offense of larceny by extortion. The court charged the jury that it could find a defendant guilty of Racketeering Acts Four and Five under Count One, which served as predicate for the § 924(c) charge in Count Thirteen,

> by finding beyond a reasonable doubt that he committed either an extortion or an attempted extortion. If you are in unanimous agreement that the defendant committed at least an attempted extortion, you do not need to go further to consider whether the extortion was actually completed.
> . . .
> Alternatively, you may find that the defendant you are considering committed Racketeering Act Four or Five by finding that the defendant became a member of a conspiracy to commit the charged extortion.

App'x at A148–49. The court did not call upon the jury to render special verdicts specifying whether its finding of guilt was predicated on conspiracy, attempt, or the completed offense, or some combination of the three.

Our court has made clear in *United States v. Barrett*, following the Supreme Court's ruling in *Davis*, that a conspiracy offense cannot constitute a crime of violence because conspiracy can be accomplished solely by agreement without any use or threat of force. *See United States v. Barrett*, 937 F.3d 126, 128–30 (2d Cir. 2019); *accord United States v. Capers*, 20 F.4th 105, 118–19 (2d Cir. 2021) ("[T]he mere *agreement* to commit [violent] crimes does not require the use of force – or any action beyond the agreement itself – and therefore is not categorically a violent crime."). The Supreme Court later decided in *Taylor*, subsequent to oral argument in this case, that the crime of attempt to commit Hobbs Act robbery, 18 U.S.C. § 1951(a), cannot be a crime of violence because it can be accomplished without the use or threat of force. 142 S. Ct. at 2020–21. While the Supreme Court's ruling in *Taylor* related to Hobbs Act robbery and not to New York larceny by extortion, the same reasoning would bar satisfying the requirement of a crime of violence by attempted larceny by extortion. Even if the completed offense necessarily involves the use or threat of force, the offense of attempt to commit that crime can be accomplished by taking steps that do not include the use or threat of force so long as they come sufficiently close to completion of the substantive offense. *See id.*; *see also People v. Bracey*, 360 N.E.2d 1094, 1097 (N.Y.

1977) (conduct constituting attempt "must 'carry the project forward within

dangerous proximity to the criminal end to be attained'" (quoting *People v.*

*Werblow*, 148 N.E. 786, 789 (N.Y. 1925))); N.Y. Penal Law § 110.00 ("A person is

guilty of an attempt to commit a crime when, with intent to commit a crime, he

engages in conduct which tends to effect the commission of such crime.").

We find "ample evidence in the record that a properly instructed jury

would have found," *Stone*, 37 F.4th at 832, that the petitioners committed the

completed offense of New York larceny by extortion (as the predicate for Count

Thirteen), as opposed to mere conspiracy or attempt to commit larceny by

extortion, neither of which, after *Davis, Barrett*, and *Taylor*, can be a crime of

violence. *See Taylor*, 142 S. Ct. at 2020; *Davis*, 139 S. Ct. at 2336; *Barrett*, 937 F.3d at

128–30. The completed offense of New York larceny by extortion requires that

the defendants succeeded in "tak[ing], obtain[ing] or withhold[ing]" property.

N.Y. Penal Law § 155.05(1); *see Jennings*, 504 N.E.2d at 1086 ("[T]he 'taking'

element [of larceny] . . . is separately defined in the statute and is satisfied by a

showing that the thief exercised dominion and control over the property for a

period of time, however temporary, in a manner wholly inconsistent with the

owner's continued rights." (citations omitted)). Here, the evidence at trial

showed that the Soccer Fever incident marked "the end of Soccer Fever," and

that the Rudaj Organization thereby subsequently increased the extent of its

control of illegal gambling in Astoria. *Ivezaj*, 568 F.3d at 92. Shutting down a

competitor through extortionate actions, and thereby strengthening one's own

business, amounts to obtaining property through extortion. *See id.* ("[A]n illegal

gambling business can constitute property under New York [extortion] law.").

The evidence gives us a high degree of confidence that a properly instructed jury

would have found that the petitioners committed the completed offense of

larceny by extortion through their violent threats of physical injury.

## C

To recapitulate, a § 2255 petitioner cannot obtain relief from an

instructional error of the sort challenged here when the court, on the basis of the

amplitude of the evidence, combined with the jury's findings, concludes with a

high degree of confidence "that a properly instructed jury would have found"

that he committed a § 924(c) offense predicated upon a valid crime of violence.

*Stone*, 37 F.4th at 832. The record before us precludes § 2255 relief. On the basis of

the ample trial evidence combined with the jury's actual findings, we conclude

with high confidence that, as to each of the petitioners, a properly instructed jury

35

would have rendered guilty verdicts on Count Thirteen's charge of brandishing a firearm, in furtherance of a crime of violence, predicated on (a) brandishing a firearm in furtherance of (b) a substantive RICO offense in turn predicated on (c) a completed offense of New York larceny by extortion that was (d) divisible from other forms of New York larceny by extortion, and (e) required proof of actual or threatened physical injury to a person. The petitioners therefore fail to demonstrate that the error was prejudicial, and thus, relief under § 2255 is unwarranted.

## CONCLUSION

The judgment of the district court is affirmed.