*Tavarez v. United States*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2022

(Argued: January 27, 2023        Decided: August 31, 2023)

No. 21-2685

_____

EMMANUEL TAVAREZ

*Petitioner-Appellant*

-v.-

UNITED STATES OF AMERICA

*Respondent-Appellee.*

_____

Before:      LIVINGSTON, *Chief Judge*, CABRANES, *Circuit Judge*, and KOVNER, *District Judge*.[*]

Petitioner Emmanuel Tavarez challenges his conviction for brandishing a firearm during and in relation to a crime of violence or drug trafficking crime, in violation of 18 U.S.C. § 924(c).   Tavarez argues that his firearms conviction cannot survive *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019), which held that one of the offenses upon which his § 924(c) conviction was predicated, conspiracy to

_____

[*] Judge Rachel P. Kovner of the United States District Court for the Eastern District of New York, sitting by designation.

commit Hobbs Act robbery, does not qualify as a "crime of violence." The United States District Court for the Eastern District of New York (Block, *J.*) denied Tavarez's petition, pursuant to 28 U.S.C. § 2255, to vacate his conviction, holding that a drug trafficking conspiracy, for which Tavarez was also convicted, remains as a valid predicate to sustain his firearms conviction. We **AFFIRM**.

FOR PETITIONER-APPELLANT:       ALLEGRA GLASHAUSSER, Assistant Federal Defender, Federal Defenders of New York, Inc., New York, NY.

FOR RESPONDENT-APPELLEE:       ALEXANDER A. SOLOMON, Assistant United States Attorney (David C. James, Assistant United States Attorney, *on the brief*), *on behalf of* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

DEBRA ANN LIVINGSTON, *Chief Judge*:

Defendant-Appellant Emmanuel Tavarez appeals from an order entered on August 24, 2021, in the Eastern District of New York (Block, *J.*), denying his petition, pursuant to 28 U.S.C. § 2255, to vacate his conviction for a firearms offense in violation of 18 U.S.C. § 924(c). Tavarez argues that this count of conviction must be vacated because it is improperly predicated on a conspiracy to commit Hobbs Act robbery, which is not a "crime of violence."[1] We agree with Tavarez

---

[1] In relevant part, § 924(c) provides for a mandatory term of imprisonment of five years for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United

2

that his conviction is not properly predicated on his allocution during plea proceedings to participation in a Hobbs Act robbery conspiracy. We nonetheless disagree that his firearms conviction and sentence as to Count Three must be vacated in light of his allocution at the same time to participation in a drug trafficking conspiracy in which he brandished a firearm. Accordingly, the order of the district court is **AFFIRMED**.

## BACKGROUND

### I. Factual Background

Petitioner Emmanuel Tavarez pled guilty in 2011 to three crimes arising from his participation in a robbery crew that stole both money and drugs from drug dealers. Tavarez, a former New York City Police Department officer, used his law enforcement position to help crew members pose as police and carry out staged raids on their victims, wearing fake badges and serving fake warrants.

During plea proceedings, Tavarez admitted to participating in multiple crimes, but focused in particular on two incidents in the early 2000s: a robbery in Connecticut, in which Tavarez brandished a firearm, and a theft in Long Island,

States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" and seven years "if the firearm is brandished . . . ." 18 U.S.C. § 924(c)(1)(A).

3

during which over five kilograms of cocaine were stolen.[2]  Tavarez served as a lookout in both.   The goal of these crimes, Tavarez said, was to steal "narcotics . . . or money" from "drug dealers," keeping the cash and selling or otherwise distributing whatever drugs were taken.   App'x 51–52.   Tavarez specifically admitted to knowing at the time he acted as a lookout that robberies were to be committed, and that their purpose was to obtain "narcotics," which would either be sold or in some other manner distributed, "and/or money."   App'x 50, 52.   He pled guilty—without a written agreement—to conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count One); conspiracy to distribute narcotics, in violation of 21 U.S.C. §§ 841 and 846 (Count Two); and the use of a firearm in furtherance of a crime of violence and drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three).

At his plea hearing, Tavarez's initial allocution to these crimes was at times confused and equivocal, likely in no small part because he decided to plead guilty at the last minute, on the morning of jury selection before his trial.   During this impromptu allocution before Magistrate Judge Victor Pohorelsky, Tavarez

---

[2] The government asserted during the plea proceedings that as to the Long Island incident, it would prove at trial the theft of drugs from inside a tractor-trailer.

4

initially claimed to not "really have any knowledge of anyone brandishing or having a firearm" in connection with the Connecticut or Long Island offenses, but appeared to admit knowledge of the use of firearms in other robberies. App'x 53–54. He then denied that he personally possessed a firearm during the Connecticut or Long Island crimes, but acknowledged awareness that others did, and that this was "part of the plan for committing the robberies." He denied assisting others in obtaining guns. After much back and forth with both Tavarez and the government (which included a discussion of aiding and abetting the use of a firearm in connection with Count Three), Magistrate Judge Pohorelsky concluded the proceedings and recommended that the district court accept Tavarez's guilty plea as to all three counts.

Further plea proceedings commenced before the district court several weeks later, at Tavarez's request. These proceedings were for the stated purpose of "mak[ing] sure the record is clear in terms of [Tavarez's] involvement with the conspiracy of those acts that support this indictment"—in particular, his use of a firearm during the Connecticut robbery and, as his counsel put it, "him being more than a lookout on the Connecticut robbery." App'x 77–78. Tavarez's counsel focused on clarifying Counts One and Three, explaining that Tavarez did not wish

5

to vacate his plea as to those counts, which the district court had already accepted, but rather sought to clarify his involvement in the underlying conduct, which he had minimized in the earlier plea proceeding in light of, *inter alia*, his embarrassment in the presence of family members there for the anticipated trial.[3] At that second allocution, after being sworn, Tavarez reaffirmed his guilty plea to Counts One and Three. In response to the district court's question about what he did in connection with the Connecticut robbery, Tavarez clarified that he "was the lookout and there was a commotion in the house in the side entrance and [he] entered the house." App'x 83–85. Tavarez admitted that he *did* personally possess a firearm "with respect to the Connecticut robbery specifically" (his attorney's words) and acknowledged that he "pulled the gun out" (his own words) during that robbery. App'x 84–85. Although Tavarez denied that he pointed his gun at, or "menace[d]" anyone with it, he repeatedly responded "Yes" to the district court's questions as to whether he "brandished" the weapon. App'x 85, 87, 90. Tavarez also admitted that he "had my firearm with me in other robberies" as well. App'x 87.

---

[3] The government indicated that Tavarez was seeking to "correct some misstatements that were made with respect to his role [in] the offense . . . so that he can clarify and get acceptance of responsibility points," which the government did not oppose. App'x 80.

Tavarez was sentenced to 216 months imprisonment on Counts One and Two, to run concurrently, and 84 months (the mandatory minimum) on Count Three, to run consecutively. App'x 94; *see also* 18. U.S.C. § 924(c)(1)(A)(ii). He did not appeal.

## II.    Procedural History

After the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591 (2015), and *United States v. Davis*, 139 S. Ct. 2319 (2019), and this Court's decision in *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019), Tavarez filed a petition to vacate his conviction and sentence, pursuant to 28 U.S.C. § 2255, on Count Three, the gun charge.[4]    *See United States v. Tavarez*, No. 08-CR-242 (FB) (E.D.N.Y.) ("District Court Docket"), Docket Nos. 1231, 1330.    In light of *Barrett*'s determination that a conspiracy to commit Hobbs Act robbery does not

---

[4] All three of these cases address § 924's scheme of enhanced punishment for certain categories of armed offenders.   First, *Johnson* invalidated as unconstitutionally vague the "residual clause" of the Armed Career Criminal Act, which subjected defendants convicted of being a felon in possession of a firearm to harsher punishment if they had three or more previous convictions for a "serious drug offense" or a "violent felony."   *See* 18 U.S.C. § 924(e)(2)(B).   In a similar vein, *Davis* voided on vagueness grounds § 924(c)'s "risk of force" clause, which set forth punishment for anyone who uses a firearm in connection with a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."   *See id.*, § 924(c)(3)(B).   Finally, *Barrett* held, in light of *Davis*, that conspiracy to commit Hobbs Act robbery does not categorically qualify as a § 924(c) crime of violence.

categorically qualify as a crime of violence and, therefore, can no longer serve as a valid predicate for a § 924(c) conviction, Tavarez argued that his conviction on Count Three had to be vacated because it had been predicated *only* upon the Hobbs Act robbery conspiracy charged in Count One. The government argued, to the contrary, that Tavarez's conviction on the gun charge was not infirm because, even if not properly predicated upon the Hobbs Act robbery conspiracy, it was still properly predicated upon the conspiracy to distribute narcotics (Count Two), with which the robbery conspiracy was intertwined.

The district court denied Tavarez's petition. The district court reasoned that because the narcotics conspiracy involved the distribution of drugs stolen over the course of the robbery conspiracy, Tavarez's allocution on the firearm count logically could not have depended solely upon Count One, but rather was "inextricably intertwined" with both conspiracies. The district court rejected Tavarez's argument that, because "Count [Two's] narcotics charge was not discussed at his re-allocution," the "true basis of his plea" to the § 924(c) charge was his participation in the Hobbs Act robbery conspiracy. App'x 107–08. The district court concluded that Tavarez's "use of a gun during various robberies was 'inextricably intertwined with, and indeed, in furtherance of [a] narcotics

8

conspiracy,' such that 'there was no possibility' that Tavarez pled guilty 'only [to] the Hobbs Act Robbery predicate.'"   App'x 106 (quoting *United States v. Vasquez*, 672 F. App'x 56, 61 (2d Cir. 2016) (summary order)).

We granted a certificate of appealability, and this appeal followed.

**DISCUSSION**

On appeal, Tavarez argues that (1) his plea allocutions did not connect the robbery conspiracy to the "separate" drug conspiracy, such that the latter cannot serve as a predicate for the § 924(c) conviction; and (2) his arguable allocution to substantive robbery (an uncharged offense) likewise cannot predicate the gun count.   We need address only the first of these arguments.

\* \* \*

We review the district court's decision to deny Tavarez's § 2255 petition *de novo*.   *See Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) ("We review a district court's findings of fact for clear error, and its denial of a Section 2255 petition *de novo*.").

As relevant here, a prisoner serving a sentence imposed by a federal court may petition a court to "vacate, set aside or correct" a sentence where the sentence was "imposed in violation of the Constitution or laws of the United States, . . . was in excess of the maximum authorized by law, or is otherwise subject to collateral

9

attack." 28 U.S.C. § 2255(a). We have previously addressed § 2255 petitions asserting that a jury was erroneously instructed that it could convict a defendant on a § 924(c) charge based on an invalid predicate. *See, e.g.*, *Colotti v. United States*, 71 F.4th 102, 115 (2d Cir. 2023); *Stone v. United States*, 37 F.4th 825 (2d Cir. 2022). In that context, collateral relief may be appropriate, but only when the petitioner establishes both an instructional error and that such instructional error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Stone*, 37 F.4th at 829 (quoting *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008)). We have said that a § 2255 petitioner asserting *Yates* error in the context of a § 924(c) conviction "cannot obtain relief from [the] instructional error . . . when the court, on the basis of the amplitude of the evidence, combined with the jury's findings, concludes with a high degree of confidence 'that a properly instructed jury would have found' that [the petitioner] committed a § 924(c) offense" based on the proper predicate.[5] *Colotti*, 71 F.4th at 119 (quoting *Stone*, 37 F.4th at 832).

In the context of pleas, the Supreme Court has "strictly limited the circumstances under which a guilty plea may be attacked on collateral review."

---

[5] *Yates* error—sometimes called *Stromberg* error—occurs when a jury is "instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth*, 555 U.S. at 58 (citing *Stromberg v. California*, 283 U.S. 359 (1931); *Yates v. United States*, 354 U.S. 298 (1957)).

10

*Bousley v. United States*, 523 U.S. 614, 621 (1998). This is both because of the broad interest in finality that attends a criminal judgment, *see United States v. Frady*, 456 U.S. 152, 164 (1982), and the general precept that pleas, which are "considered an admission of all the elements of the crime," are "not ordinarily subject to collateral attack," *Salas v. United States*, 139 F.3d 322, 324 (2d Cir. 1998). A petitioner may seek collateral relief to challenge the constitutional validity of a guilty plea where a subsequent substantive constitutional or statutory holding creates "a significant risk that a defendant stands convicted of an act that the law does not make criminal." *Bousley*, 523 U.S. at 620 (internal quotation marks and citation omitted). But where such a claim was not raised on direct review "the defendant [must] first demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent.'" *Id.* at 622 (citations omitted).

Because the government has not argued otherwise, we assume without deciding that Tavarez has not procedurally defaulted his claim.[6] On the merits, we apply the new substantive rule the Supreme Court announced in *Davis* and

---

[6] We add that because Tavarez pled guilty without a written plea agreement, we do not have occasion to consider any effect of a collateral attack waiver. We generally enforce such agreements when entered into knowingly and voluntarily. *See Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) ("[T]he possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements." (citation omitted)).

that we applied in *Barrett*, recognizing that a § 924(c) conviction based on an invalid predicate is error.[7]  *See United States v. Dussard*, 967 F.3d 149, 156 (2d Cir. 2020).  But even when collateral relief is available, harmless error analysis still applies.  *See Kassir v. United States*, 3 F.4th 556, 564 (2d Cir. 2021) ("Our Court has long reserved § 2255 relief for prejudicial errors that are so grave, they 'result[ ] in a complete miscarriage of justice.'" (quoting *Nnebe v. United States*, 534 F.3d 87, 90 (2d Cir. 2008)).  And this proposition alone is enough to doom Tavarez's claim because Tavarez's plea to Count Three was predicated not only upon a now-invalid Hobbs Act robbery conspiracy, but also the still-valid drug trafficking conspiracy to which he also pled guilty.  Accordingly, any *Davis* error is harmless because the conviction was, in fact, predicated both on an invalid predicate and a valid one.[8]

---

[7] Our decision in *Barrett* applied the Supreme Court's holding in *Davis* to conclude that conspiracy to commit Hobbs Act robbery no longer qualifies as a categorical crime of violence.  We have since held that *Davis* applies retroactively on collateral review. *See Hall v. United States*, 58 F.4th 55, 62 (2d Cir. 2023).

[8] In *Kassir*, we noted that this Court has not yet decided what harmless error standard applies in the context of a § 2255 proceeding.  *See* 3 F.4th at 564 n.43.  We need not reach the question here, as any error in predicating Tavarez's guilty plea as to Count Three on his participation in a Hobbs Act robbery conspiracy was harmless under either of the two potentially applicable standards.  *See also Peck v. United States*, 106 F.3d 450, 454 (2d Cir. 1997).

Count Three, the § 924(c) count at issue, charges that from on or about January 1, 2001, to March 12, 2009, Tavarez and his co-conspirators used and carried firearms during and in relation to the Hobbs Act robbery conspiracy charged in Count One *and* the drug trafficking conspiracy charged in Count Two. *See* District Court Docket No. 438 at 3–4. Count Three further charges that these firearms were knowingly and intentionally possessed in furtherance of these conspiracies, and were brandished. Tavarez entered a guilty plea to Count Three and also to both of the underlying conspiracy counts (Counts One and Two). During his two plea allocutions, moreover, Tavarez admitted to facts that establish that he possessed and brandished a gun in furtherance not only of a Hobbs Act robbery conspiracy, but also the drug trafficking conspiracy with which the robbery conspiracy was factually intertwined. *Cf. Salas*, 139 F.3d at 324 (noting that when a § 2255 petitioner invokes an intervening change in law to challenge whether the facts to which he admitted constitute a crime, he "cannot . . . challenge the facts underlying his guilty plea").

At the initial plea allocution, Tavarez was asked what he did in connection with the two conspiracies, and he replied, "I participated with the robbing of drug dealers." App'x 51. When asked whether he knew that the purpose of the

13

robberies was "to obtain narcotics and/or money," he replied "Yes," also affirming that he understood that the narcotics would be sold or otherwise distributed, App'x 52, and that cocaine in excess of five kilograms was obtained during the theft of drugs in Long Island, during which he served as a lookout, App'x 56. Although Tavarez initially disclaimed knowledge of any firearms being involved in the two conspiracies, App'x 53, he stated later in his first plea allocution that he knew that some of his co-conspirators were carrying firearms on the two specific occasions during which he admitted serving as a lookout, and that this was part of the plan for committing those crimes, App'x 65.

Tavarez's statements during the initial plea proceeding were further clarified at his own request during the second proceeding before the district court. He admitted under oath that during the Connecticut robbery, specifically, he had his gun with him and, upon noting a commotion in the house during the course of the robbery, he entered the house and pulled his gun out. App'x 85. When specifically asked whether he brandished the gun, Tavarez three times responded, "Yes." App'x 87, 89–90. He admitted to having his firearm with him in other robberies as well. App'x 87.

14

Tavarez argues that because the second plea proceeding focused on clarifying his role with respect to Count One, the Hobbs Act robbery conspiracy, and Count Three, the § 924(c) charge, "the plea record only connect[s] the § 924(c) count to a robbery conspiracy." Appellant's Br. at 11. We disagree. At the start, as we have said before, "§ 924(c) does not require the defendant to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was, in fact, committed."[9] *Johnson v. United States*, 779 F.3d 125, 129 (2d Cir. 2015); *see also Dussard*, 967 F.3d at 157–58. But here, Tavarez *pled guilty* to participation in a drug trafficking conspiracy during the first plea proceeding, and to a § 924(c) count premised in the indictment

---

[9] Thus, in *United States v. Rivera*, 679 F. App'x 51 (2d Cir. 2017) (summary order), the defendant pled guilty to aiding and abetting murder in connection with an attempted armed narcotics robbery, and urged on appeal that his conviction pursuant to § 924(j) should be vacated because it could not be predicated on attempted robbery after the Supreme Court's ruling in *Johnson*. *Id.* at 55; *see also* 18 U.S.C. § 924(j) (establishing penalties for anyone who "in the course of a violation of [§ 924(c)] causes the death of a person through the use of a firearm"). We rejected this argument because Rivera had allocuted to "the attempted robbery of [the victim] *of narcotics and narcotics proceeds*," *id.* at 53, such that "his § 924 conviction rest[ed] on a valid predicate in any event, specifically a drug trafficking felony," *id.* at 55, even though he only pled guilty to the single § 924(j) count, *United States v. Rivera*, No. 16-191 (2d Cir. 2017), Docket No. 25 at 23. "Rivera's own allocution provided the factual basis for the underlying narcotics offense," we said, notwithstanding the fact that at sentencing the government dismissed the substantive drug trafficking charge. *Rivera*, 679 F. App'x at 55.

on both the admittedly invalid robbery conspiracy predicate and the valid drug trafficking conspiracy. *See* District Court Docket No. 438 at 4.

Tavarez argues that his second allocution makes plain that the robbery and drug trafficking conspiracies were factually distinct, such that his admission to pulling out and brandishing a gun in connection with the Connecticut robbery is an inadequate basis on which to conclude that he violated § 924(c) in connection with his admitted participation in the drug trafficking conspiracy. But this is incorrect.

To be sure, during the plea proceedings the parties appeared at times to assume that Tavarez's account of the Connecticut robbery in which he participated provided the factual basis for his plea to Count One (the Hobbs Act robbery conspiracy), whereas the Long Island episode related to Count Two (the drug distribution conspiracy). Read as a whole, however, Tavarez's allocution makes clear that the Connecticut and Long Island jobs were undertaken by the same crew for the same reasons, and in furtherance of agreements to rob drug dealers and distribute any drugs that were obtained. Although Tavarez maintained, as a precise factual matter, that he never brandished a gun in Long Island, he never suggested that either job was not part and parcel of the same series of criminal

16

acts. He simply allocuted to one event for the purpose of satisfying the essentials of the drug trafficking conspiracy (*i.e.*, the quantity of drugs involved[10]) and to the other for the purpose of establishing the elements of the conspiracy to commit Hobbs Act robbery (*i.e.*, to take property from another by use of force, rather than mere theft).[11]

Thus, as a legal matter, Tavarez was charged with, and allocuted to, two distinct conspiracies. But as a factual matter, Tavarez's two allocutions make clear that the two charged conspiracies were intertwined. When Tavarez admitted to brandishing a firearm in furtherance of one, he necessarily admitted to brandishing it in furtherance of the other. Accordingly, Tavarez is not entitled to collateral relief based on the fact that the Hobbs Act robbery conspiracy is no longer a valid predicate for a § 924(c) charge.

---

[10] Count Two charged Tavarez with conspiracy to distribute and possess with intent to distribute one or more controlled substances, involving one kilogram or more of a substance containing heroin; five kilograms or more of a substance containing cocaine; a substance containing MDMA; and a substance containing marijuana. District Court Docket No. 438 at 3; *see also* App'x 33, 92.

[11] In assessing these facts, we consider both of Tavarez's two allocutions together. We see no merit in Tavarez's suggestion that a district court may not choose in its discretion to clarify the factual record by means of a partial re-allocution.

17

## CONCLUSION

Because Tavarez's firearms conviction remains properly predicated upon his participation in a drug trafficking conspiracy, the district court correctly denied his § 2255 petition.   We therefore AFFIRM the judgment of the district court.